**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. 21-10848 (KBO) |

**EMERGENCY MOTION OF SEECUBIC, INC.
AND SLS HOLDINGS VI, LLC FOR AN ORDER DISMISSING
INVOLUNTARY CHAPTER 7 CASE**

SeeCubic, Inc. ("**SeeCubic**") and SLS Holdings VI, LLC ("**SLS**" and, together with SeeCubic, the "**Movants**") by and through their undersigned counsel, hereby move (the "**Motion**") this Court for entry of an order dismissing the involuntary Chapter 7 case (the "**Chapter 7 Case**") of the above-captioned debtor Stream TV Networks, Inc. ("**Stream**" or the "**Debtor**") for lack of jurisdiction or, alternatively, pursuant to 11 U.S.C. § 707(a). In support of the Motion, Movants respectfully represent the following:

**PRELIMINARY STATEMENT[1]**

1. On May 17, 2021, this Court dismissed the Debtor's voluntary Chapter 11 bankruptcy proceedings "for cause" because, among other reasons, the case was filed as part of a bad faith attempt to interfere with ongoing litigation between the Debtor and SeeCubic in the Delaware Court of Chancery. Specifically, this Court held that the Debtor "failed to adequately fulfill its burden to show that the bankruptcy filing was filed in good faith and for a legitimate bankruptcy purpose. It was designed to stop SeeCubic and the debtor's secured creditors from fully implementing the omnibus agreement, to unravel it and to avoid the Chancery Court's order

---

[1]  Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them below.

and, very likely, a mandatory injunction [against the Debtor and the Rajans]."[2]  On May 21, 2021, the Debtor filed a Notice of Appeal of the Chapter 11 Dismissal Order, which has been docketed in the District Court.

2.    Nevertheless, on May 23, 2021, three purported unsecured creditors—none of whom filed objections to the Motions to Dismiss filed by Movants and the U.S. Trustee in Stream's prior Chapter 11 Case or made any request to convert the now-dismissed Chapter 11 Case to Chapter 7 at that time—filed a new, involuntary Chapter 7 Petition against Stream, apparently so that Stream can again obtain the benefit of the automatic stay.  This latest attempt to frustrate the pending Chancery Court Action regarding the Omnibus Agreement should be immediately and summarily dismissed for two reasons.

3.    *First*, due to the pending appeal of this Court's Dismissal Order, this Court lacks jurisdiction over the Chapter 7 Petition under the so-called "divestiture rule."  As the Supreme Court has explained, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the [appellate court] and divests the [trial] court of its control over those aspects of the case involved in the appeal." *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  The divestiture rule therefore bars this Court from considering the Chapter 7 Petition because it would require the Court to reopen issues inextricably intertwined with the current appeal of the Dismissal Order, including the necessary finding that dismissal—rather than conversion to chapter 7—was "in the best interests of creditors and the estate" (*see* 11 U.S.C. § 1112(b)).  Accordingly, the Chapter 7 Petition should be dismissed for lack of jurisdiction.

---

[2]  Hr'g Tr., at 19:8-16, *In re Stream TV Networks, Inc.*, No. 21-10433 (KBO) (Bankr. D. Del. May 17, 2021) (the "**Motion to Dismiss Ruling**").  A copy of the transcript of the Motion to Dismiss Ruling is attached hereto as Exhibit A.

4. *Second*, even assuming this Court does retain jurisdiction over the Chapter 7 Petition, dismissal of the Chapter 7 Case "for cause" is warranted under section 707(a) of the Bankruptcy Code. *See In re MacFarlane Webster Assocs.*, 121 B.R. 694, 696 (Bankr. S.D.N.Y. 1990) (dismissing involuntary chapter 7 case on motion of creditor under section 707(a)). As this Court explained in the Motion to Dismiss Ruling, any federal bankruptcy case involving Stream should only be maintained "after the completion of the Chancery Court litigation and the omnibus agreement's asset transfers." (Motion to Dismiss Ruling at 19:25-20:2.)

5. For these reasons, the Court should dismiss the Chapter 7 Case as soon as practicable. Additionally, in order to effectuate the intent of and to enforce its Dismissal Order, Movants submit that the Court should bar the filing of future successive bankruptcy petitions by, on behalf of, or against the Debtor pending the later to occur of (1) resolution of the Appeal and (2) conclusion of the Chancery Court Action. This relief will further judicial economy and stop the ongoing abuse of process by parties attempting to obstruct the pending Chancery Court Action regarding the Omnibus Agreement.[3]

## LEGAL PREDICATES

6. The legal predicates for the relief requested herein are (a) the divestiture rule articulated by the Supreme Court in *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982), (b) sections 105(a), 362(d), and 707(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and (c) Rules 1013, 2002(a)(4), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, Movants consent to the entry of a final judgment or order with respect to this

---

[3] In the event the Court determines not to dismiss this Chapter 7 Case, Movants submit that immediate relief from the automatic stay should be granted in order to permit the continued prosecution of the Chancery Court Action.

Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND[4]

### I. DISMISSAL OF STREAM'S PRIOR BANKRUPTCY CASE AND THE SUBSEQUENT APPEAL

7. On March 12, 2021, Movants filed the *Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case* (Chapter 11 Dkt. No. 46, the "**First Motion to Dismiss**"), generally alleging that the prior Chapter 11 Case was commenced in bad faith as a litigation tactic to forestall the Chancery Court's entry of judgment against Mr. Rajan and the other defendants. On March 24, 2021, the United States Trustee (the "**U.S. Trustee**") filed the *United States Trustee's Motion for an Order Dismissing or Converting this Case to Chapter 7* (Chapter 11 Dkt. No. 84, the "**UST Motion to Dismiss**" and, together with the First Motion to Dismiss, the "**Motions to Dismiss**"), in which it sought, alternatively, to (i) dismiss the prior Chapter 11 Case or (ii) convert the prior Chapter 11 Case to Chapter 7. On April 30, 2021, the Unsecured Creditors Committee appointed in the Chapter 11 Case (the "**UCC**") filed the *Statement of the Official Committee of Unsecured Creditors Regarding the Motions to Dismiss this Chapter 11 Case and Joinder to the Omnibus Objection* (Chapter 11 Dkt. No. 159, the "**UCC Statement**") joining in the Motions to Dismiss.

---

[4] All citations herein to "Chapter 11 Dkt No. __" are to the docket in the Debtor's prior voluntary chapter 11 case, *In re Stream TV Networks, Inc.*, No. 21-10433(KBO) (Bankr. D. Del.) (the "**Chapter 11 Case**"). In light of this Court's familiarity with the Chapter 11 Case, and thus the Debtor, its business, the key parties in these proceedings, the Omnibus Agreement, and the litigation currently pending in the Delaware Court of Chancery (the "**Chancery Court**") as C.A. No. 2020-0766-JTL (the "**Chancery Court Action**"), Movants have omitted those details from this Motion. Additional background can be found in this Court's Motion to Dismiss Ruling, the First Motion to Dismiss, and the December 8, 2020 opinion in the Chancery Court Action (the "**Chancery Opinion**"). *See Stream TV Networks, Inc. v. SeeCubic, Inc.*, C.A. No. 2020-0766-JTL, 2020 WL 7230419 (Del. Ch. Dec. 8, 2020).

8.      After a two day trial on May 10 and 11, 2021, the Court issued a bench ruling on May 17, 2021 (the "**Motion to Dismiss Ruling**"), granting the Motions to Dismiss, and dismissing the Chapter 11 Case. The Court concluded that the Debtor had failed "to show that the bankruptcy filing was filed in good faith and for a legitimate bankruptcy purpose" and instead found that the filing was "designed to stop SeeCubic and the debtor's secured creditors from fully implementing the omnibus agreement, to unravel it and to avoid the Chancery Court's order and, very likely, a mandatory injunction." (Motion to Dismiss Ruling at 19:8-16.) The Court determined the dismissal would be without prejudice, but explained its belief that "any future filing would occur after the completion of the Chancery Court litigation and the omnibus agreement's asset transfers." (*Id.* at 19:17-20:2.) The Court also rejected the Debtor's motion for a stay pending appeal, finding that granting such relief would be "acting as complicit in the bad faith filing." (*Id.* at 22:10-18.)

9.      The Court entered an order memorializing the Motion to Dismiss Ruling that same day (Chapter 11 Dkt. No. 198, the "**Dismissal Order**"). On May 21, 2021, the Debtor filed its *Notice of Appeal Under 28 U.S.C. § 158(a) and Statement of Election* (Chapter 11 Dkt. No. 202, the "**Notice of Appeal**"), commencing an appeal of the Dismissal Order (the "**Appeal**"). The Appeal is currently pending in the District Court for the District of Delaware (the "**District Court**") at case number 21-723. (*See* Chapter 11 Dkt. No. 205.)

10.     On May 22, 2021, SeeCubic filed in the Chancery Court Action its *Reply Brief in Further Support of Its Motion for Summary Judgment* (the "**Summary Judgment Reply**").

**II.     THIS CHAPTER 7 CASE**

11.     On May 23, 2021, two days after the Notice of Appeal was filed, the above-captioned Chapter 7 Case was commenced via the filing of an involuntary petition against the Debtor (D.I. 1, the "**Chapter 7 Petition**"). The Chapter 7 Petition was filed by three alleged

5

creditors—Jamuna Travels, Inc., Walsh CHB, Inc. and Rembrandt 3D Holding Ltd.—who purportedly hold a total of $1,669,519.25 in unsecured claims against the Debtor (collectively, the "**Petitioning Creditors**").  None of the Petitioning Creditors objected to the Motions to Dismiss Stream's prior Chapter 11 Case.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

### I. THE APPEAL OF THE DISMISSAL ORDER DIVESTED THIS COURT OF JURISDICTION TO ENTERTAIN THE CHAPTER 7 PETITION[5]

12.    This Court lacks jurisdiction to hear this Chapter 7 Case because the filing of the Notice of Appeal divested the Court of jurisdiction to do so.  The Supreme Court has explained that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  Thus, the notice of appeal divests the lower court of jurisdiction over the issues that are on appeal. *In re G–I Holdings, Inc.*, 568 B.R. 731, 763–64 (Bankr. D.N.J. 2017).  Known as the "divestiture rule," this principle applies to prevent "confusion and inefficiency which would of necessity result were two courts to be considering the same . . . issues simultaneously." *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985).

---

[5]    To be clear, Movants do not oppose the Chapter 7 Petition at this time on the basis of technical compliance with the number of creditors or amount of claims, etc.; rather, Movants seek dismissal of the Chapter 7 Case on jurisdictional grounds due to the pending Appeal, which this Court has the authority to determine. *See In re QDN, LLC*, 363 F. App'x 873, 876 (3d Cir. 2010) (permitting creditor to "bring the issue of subject matter jurisdiction to the court's attention").  While Bankruptcy Rule 1011 suggests only the debtor may "contest" an involuntary ***petition*** (*see* Fed. R. Bankr. P. 1011(a)), including, for example, on the grounds enumerated in section 303, any party in interest possesses standing to move to dismiss an involuntary ***case***, including under section 707(a). *See, e.g.*, *In re Jr. Food Mart of Arkansas, Inc.*, 234 B.R. 420, 421 (Bankr. E.D. Ark. 1999) ("[T]he Code and case authority clearly permit a party in interest to prosecute a motion to dismiss or abstain."); *see also In re MacFarlane Webster Assocs.*, 121 B.R. at 696 (dismissing involuntary chapter 7 case on motion of creditor under section 707(a)).  Pursuant to Bankruptcy Rule 1013, this Court can, and should, resolve the Chapter 7 Petition expeditiously, and dismiss this Chapter 7 Case on the grounds set forth herein. *See* Fed. R. Bankr. P. 1013.

13. The test is "a functional one," prohibiting the lower court's consideration of issues "which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process." *In re G–I Holdings*, 568 B.R. at 763; *see also In re Whispering Pines Ests., Inc.*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007) (same). Importantly, the rule does not apply to bar a lower court from "enforc[ing] or implement[ing] its order" because "'in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review.'" *In re Pursuit Cap. Mgmt., LLC*, No. 14-10610 (LSS), 2017 WL 2537234, at *6 (Bankr. D. Del. June 9, 2017) (citation omitted); *see also In re Washington Mut., Inc.*, 461 B.R. 200, 219 (Bankr. D. Del. 2011) ("The correct statement of the Divestiture Rule is that so long as the lower court is not altering the appealed order, the lower court retains jurisdiction to enforce it."), *vacated in part on other grounds*, No. 08-12229 (MFW), 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). Thus, "the trial court's task is to determine whether the matters before it implicate the appeal or are collateral to those issues involved in it." *In re Pursuit Cap. Mgmt.*, 2017 WL 2537234, at *6; *see also In re G–I Holdings*, 568 B.R. at 764 (divestiture applies where issues on appeal are "identical" to those before the bankruptcy court, and if bankruptcy court's ruling "would interfere with or undermine the appellate process"); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS), 2016 WL 6808958, at *1 (Bankr. D. Del. Nov. 17, 2016) ("[A] lower court may take no action which interferes with the appeal process or with the jurisdiction of the appellate court." (citation omitted)).

14. The Debtor filed the Notice of Appeal of the Dismissal Order on May 21, 2021, and the Appeal has been docketed in the District Court. As of that date, this Court was divested of jurisdiction to entertain and rule upon any issues that that may "implicate the [A]ppeal" or

"interfere with or undermine the appellate process." The Appeal squarely places before the District Court several issues that are directly implicated by prosecution of the Chapter 7 Case.

15. *First*, by pursuing the Appeal of the Dismissal Order, the Debtor is ultimately seeking relief that is fundamentally inconsistent with that sought by the Chapter 7 Petition. In the Chapter 11 Case, the Debtor remained "in possession" of the estate and was controlled by its sole director (Mathu Rajan). *See, e.g.*, 11 U.S.C. § 1107(a); *see also* 7 Collier on Bankruptcy ¶ 1107.01 (16th ed. 2021) ("[D]ebtors in possession are the norm in a chapter 11 case . . ."). By its Appeal of the Dismissal Order, the Debtor seeks to reinstate the Chapter 11 Case and administer the Debtor's estate under the supervision of its existing management. Indeed, in opposing dismissal of the Chapter 11 Case the Debtor routinely touted its interest in, and ability to, reorganize and restructure Stream's business using the various powers conferred by the Bankruptcy Code. (*See, e.g.*, Debtor Opposition[6] ¶¶ 45-46 (explaining that by initiating the Chapter 11 Case, the Debtor sought "to preserve the value of its enterprise for all interested parties" and asserting that it had "a viable and valuable business"); VTI Opposition[7] ¶ 42 ("[T]he Company has sought relief here in order to use the unique provisions of the Bankruptcy Code to," among other things, "reorganize the Company to maximize its value for the benefit of all of its creditors, equity holders and employees"). By contrast, a chapter 7 case necessarily involves the ousting of debtor's management; a chapter 7 trustee is appointed as representative of the estate and oversees the debtor's bankruptcy proceedings. *See id.* at §§ 701-704. Thus, the Petitioners in this Chapter 7 Case effectively seek appointment of a trustee to take control of the

---

[6] *Debtor's Response in Opposition to (I) the Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case and (II) the United States Trustee's Motion for an Order Dismissing or Converting the Case to Chapter 7* (Chapter 11 Dkt. No. 100, the "**Debtor Opposition**").

[7] *Visual Technology Innovations, Inc.'s Response in Opposition to the Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Debtor's Chapter 11 Case* (Chapter 11 Dkt. No. 101, the "**VTI Opposition**").

Debtor's estate, while the Debtor itself is simultaneously pursuing a Chapter 11 Case led by current management in the District Court. This is precisely the sort of "confusion and inefficiency" that the divestiture rule is designed to avoid. *Venen*, 758 F.2d at 121.

16.     *Second*, the Chapter 7 Petition is, in effect, a request for reconsideration of this Court's findings in the Motion to Dismiss Ruling, which are currently before the District Court. In the UST Motion to Dismiss, the U.S. Trustee sought alternative forms of relief: dismissal of the Chapter 11 Case or, alternatively, conversion to Chapter 7. (*See* UST Motion to Dismiss ¶ 36.) Pursuant to section 1112(b), where "cause" exists to dismiss or convert a case, the Court must then determine which of those options is in the "best interests of creditors and the estate." 11 U.S.C. § 1112(b); *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012) ("Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'"). Accordingly, in finding "cause" and granting the primary relief (dismissal), the Court necessarily concluded that dismissal was in the "best interests of creditors and the estate" vis-à-vis conversion. (*See* Motion to Dismiss Ruling at 10:6-8 ("Pursuant to Section 1112(b) of the Bankruptcy Code, the court may dismiss a Chapter 11 case for cause if it's in the best interest of the creditors and the estate.").)

17.     Entertaining the Chapter 7 Petition and allowing this Chapter 7 Case to proceed would be tantamount to granting the alternative relief that was rejected by the Court in favor of dismissal, thus "resulting in the substantial confusion and inefficiency this prudential rule seeks to avoid." *In re Pursuit Cap. Mgmt.*, 2017 WL 2537234, at *10. In light of the overlap in the

9

issues presented by the Appeal and the Chapter 7 Petition, this Court lacks jurisdiction over this Chapter 7 Case.[8]

## II.    ALTERNATIVELY, THIS COURT SHOULD DISMISS THIS CHAPTER 7 CASE PURSUANT TO SECTION 707(A)

18.    In the event the Court finds it has jurisdiction, it should dismiss the Chapter 7 Case under section 707(a) of the Bankruptcy Code, for largely the same reasons it dismissed the Chapter 11 Case.  Section 707 provides for the dismissal of a chapter 7 case "for cause."  11 U.S.C. § 707(a).  While subsection (a) includes several examples of 'cause,' the list is not exhaustive.  *See In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016) ("The statute lists three grounds 'for cause' that all courts have understood as illustrative, not exclusive . . ."); *In re Kempner*, 152 B.R. 37, 39 (D. Del. 1993) ("Courts interpreting § 707(a) have held that the three grounds 'for cause' to dismiss a Chapter 7 petition expressly enumerated in § 707(a) . . . are not intended as an exhaustive list."); *see also* 6 Collier on Bankruptcy ¶ 707.03[1] (16th ed. 2021) ("The examples [in section 707(a)] are merely illustrative, and the court may dismiss the case on other grounds when cause is found to exist.").  Instead, the decision to dismiss under section 707 "is guided by equitable considerations and is committed to the sound discretion of the bankruptcy court."  *In re Murray*, 900 F.3d 53, 58 (2d Cir. 2018); *see also In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) ("[T]he decision to dismiss a petition for lack of good faith rests within the sound discretion of the bankruptcy court.").

---

[8] While the divestiture rule prevents the Court's consideration of the Chapter 7 Petition and thus dismissal is warranted, this Court can, and should, enter an order barring any future bankruptcy filings by, on behalf of, or against the Debtor, until the later to occur of (1) resolution of the Appeal and (2) conclusion of the Chancery Court Action.  The Court retains jurisdiction to do so in order to "enforce or implement its order" and will not "disrupt the appellate process [because] its decision remains intact for the appellate court to review."  *In re Pursuit Cap. Mgmt.*, 2017 WL 2537234, at *6 (citations omitted).  Barring any further filings will avoid further frustration of the Court's intent in the Motion to Dismiss Ruling—to allow the Chancery Court Action to run its course—and is firmly within this Court's "equitable powers under 11 U.S.C. § 105 [which] 'surely enable it to control its own docket.'"  *In re Am. Cap. Equip.*, 688 F.3d at 154 (citation omitted).

19. Section 707(a) "covers both voluntary and involuntary cases." *In re MacFarlane Webster Assocs.*, 121 B.R. at 696. Much like dismissal under section 1112(b), courts have exercised discretion to dismiss under section 707(a) in instances where the case is in essence a two-party dispute capable of resolution in another forum; where the case would not serve the underlying purposes of the Bankruptcy Code, and where judicial economy and efficiency thus favor dismissal; and where the petitioner exhibits bad faith. Because, as this Court already found, effectively all of these circumstances are present here, this case is a prime candidate for dismissal.

20. *First*, this is effectively a two-party dispute that is capable of being resolved in the Chancery Court. *See In re Bilzerian*, 258 B.R. 850, 858 (Bankr. M.D. Fla. 2001), *aff'd*, 276 B.R. 285 (M.D. Fla. 2002), *aff'd sub nom. Bilzerian v. SEC*, 82 F. App'x 213 (11th Cir. 2003) (dismissing chapter 7 case in favor of pending litigation in separate forum noting that court-appointed receiver would "[f]unctionally . . . be acting as a Chapter 7 trustee . . . under the control of a federal district court judge—the same judge that has vast familiarity with the background of this case . . ."); *In re Murray*, 900 F.3d at 61 (affirming bankruptcy court's dismissal of chapter 7 case, and its finding that the "petition was part of a long-running, two-party dispute"). As the UCC concluded after conducting its investigation in the Chapter 11 Case—a conclusion this Court afforded "great consideration and weight"—the Chapter 11 Case is "akin to a two-party dispute that should proceed outside of bankruptcy." (Motion to Dismiss Ruling at 18:10-17.) And as this Court explained in granting dismissal of the Chapter 11 Case without prejudice, the appropriate next steps involve the Chancery Court's final resolution of the matters before it, as well as resolution of any disputes between the parties with respect to the

Omnibus Agreement and the transfers of assets already made to SeeCubic. (*See id.* at 19:25-20:2.) Dismissal is warranted to allow that to occur.

21.     *Second*, and relatedly, this Chapter 7 Case will serve no valid bankruptcy purpose, and thus judicial economy militates in favor of dismissal. *See In re Lots by Murphy, Inc.*, 430 B.R. 431, 436 (Bankr. S.D. Tex. 2010) (dismissing chapter 7 case where there were no assets to satisfy creditor claims and case would thus not serve the purposes underlying the Bankruptcy Code, noting that "[n]either the bankruptcy courts, nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions" (citation omitted)); *In re MacFarlane Webster Assocs.*, 121 B.R. at 695, 704 (dismissing involuntary chapter 7 commenced by junior creditor, noting that only estate assets "consist[ed] of claims to avoid a pre-petition foreclosure by the senior mortgagee," and because such an action would not clear the secured debt, "[d]ismissal would result in no prejudice to the general creditors if any"). The Court previously found that "by virtue of the Chancery Court's order the debtor entered these proceeding without any business operations, employees, cash, income, or ability to generate revenue" and "no material assets beyond those which are the subject of the omnibus agreement." (Motion to Dismiss Ruling at 11:25-12:5.)  And, as the Chancery Court aptly noted, the alternative to the Omnibus Agreement is foreclosure, in which case "Stream and its stockholders would have been left with nothing." Chancery Opinion at *1. The Court also found that the Chapter 11 Case would result in "significant administrative expenses" and the Debtor would still have to deal with the claims of its secured lenders "whose claim amounts will only grow as a result of the delay, rejection and attendant litigation." (*See* Motion to Dismiss Ruling at 17:15-20.)

22. Those issues are equally applicable and relevant here; any actions that might be taken by a chapter 7 trustee would similarly be "vigorously opposed, lengthy, costly and have less than certain endings." (*Id.* at 17:12-14.) And because the Chancery Court Action is much further along—in fact, it is near completion—deference to that forum to resolve this two-party dispute will necessarily avoid "the likely avalanche of resulting administrative expenses." (*Id.* at 18:4.) Indeed, only days ago SeeCubic filed in the Chancery Court its Summary Judgment Reply in support of its request for a declaratory judgment and permanent injunctive relief.

23. *Finally*, the Petitioning Creditors, like the Debtor in the Chapter 11 Case, are not before this court in good faith. *See In re Tamecki*, 229 F.3d at 207 ("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing . . ."); *In re Krueger*, 812 F.3d at 370 ("[A] debtor's bad faith in the bankruptcy process can serve as the basis of a dismissal 'for cause.' . . ."). In *Tamecki*, the Third Circuit explained that good faith in the context of section 707(a) dismissal should be assessed "on an ad hoc basis and [courts] must decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." 229 F.3d at 207 (citation omitted). "Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith." *Id.*; *see also In re Crest By The Sea, LLC*, 522 B.R. 540, 547 (Bankr. D.N.J. 2014) (same). "[I]n deciding a motion to dismiss based upon a debtor's lack of good faith, a bankruptcy court may consider all of the facts and circumstances surrounding the debtor's filing of the bankruptcy petition." *Perlin v. Hitachi Cap. Am. Corp.*, 497 F.3d 364, 374 (3d Cir. 2007); *see also In re Bilzerian*, 258 B.R. at 857 ("cause" under section 707 "requires an analysis of all of the facts and circumstances leading up to the filing of this case to include the debtor's motive in filing the case, the purposes which will be achieved in this case, and whether the debtor's motive and purposes are consistent

with the purpose of chapter 7 . . ."). "Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process." *In re Kempner*, 152 B.R. at 39. The Court has already established the Debtor's lack of good faith; this extends to the Petitioning Creditors.

24.     In its Motion to Dismiss Ruling, the Court clearly held that the Debtor "did not come to this court as the honest but unfortunate debtor to preserve and maximize value for its stakeholders," but instead "to gain a tactical litigation advantage that is a part of a continued pattern of effort to nullify, undermine, and/or interfere with the omnibus agreement, vitiate the purpose and effect of the Chancery Court's order, and to maintain ownership and control over the assets of the debtor for his own benefit." (*Id.* at 13:20-14:1, 15:14-19.) The Chapter 7 Case accomplishes the same thing, and effectively skirts this Court's Dismissal Order, by yet again frustrating the Chancery Court's ability to resolve the dispute.

25.     The timing and circumstances of this filing suggest this was clearly the intent, and make it nearly impossible for the Petitioning Creditors to satisfy their burden of proving good faith. Less than 24 hours after the Chapter 7 Petition was filed, Mr. Rajan sent a letter to the Chancery Court "advis[ing]" the court that "certain of the creditors" of Stream had commenced this Chapter 7 Case. (*See* Exhibit B.) The very next day, Mr. Rajan sent yet another letter, this time to "bring to [the Chancery Court's] attention" certain "fraud" that was purportedly "perpetrated on both [Stream] and on the Court," claiming that "[t]he Omnibus Agreement on its face is a fraudulent conveyance and a clear violation of the absolute priority rule," and asking the court to rescind the injunction. (*See* Exhibit C.)[9]  The same day, one of the Petitioning Creditors

---

[9]     Certain exhibits to the letters attached hereto as Exhibits B and C have been omitted for brevity.

sent a mass-email to Stream's creditors indicating that by simply filling out an involuntary petition against the Debtor and sending it to counsel to the Petitioning Creditors "he may be able to get every ones [sic] money" purportedly because "stream tv is willing to pay all vendors." (*See* Exhibit D.)  Finally, just yesterday Mr. Rajan contacted a Stream creditor to set up a Zoom meeting, purportedly to discuss the Chapter 7 Petition.  (*See* Exhibit E.)

26. These actions appear to be nothing more than a continuation of the campaign to misuse the bankruptcy process to stave off final judgment in the Chancery Court and undermine the Omnibus Agreement.  Further, the casual nature and timing of the solicitation to creditors is itself antithetical to the purpose and intent of the Bankruptcy Code, which this Court aptly described as requiring that debtors seeking protection "act in conformity with the code's underlying principles of equity and fairness," (Motion to Dismiss Ruling at 16:12-14), and suggests an intent to "abuse[] the provisions, purpose, [and] spirit of bankruptcy law." *In re Tamecki*, 229 F.3d at 207; *see also In re Crest By The Sea*, 522 B.R. at 548 (dismissing chapter 7 case, citing the "careless disregard with which [a member of the debtor] and the other Members approached the bankruptcy filing" and their "disregard for the bankruptcy process").

**III. IF THE COURT ALLOWS THIS CHAPTER 7 CASE TO PROCEED, RELIEF FROM THE STAY IS NECESSARY TO CONTINUE THE CHANCERY COURT ACTION**

27. While this case is a prime candidate for dismissal under section 707, if the Court determines that this Chapter 7 Case should proceed, relief from the stay is necessary to aid in the implementation of the Dismissal Order, by allowing the Chancery Court Action to proceed.  As an action against the Debtor, continuation of the Chancery Court Action is subject to the automatic stay.  *See* 11 U.S.C. § 362(a)(1).  Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief

15

from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(1).

28.     "Cause" is not defined by section 362(d)(1). *See In re The SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). Courts in the Third Circuit have stated that "cause is a flexible concept" often involving a "fact intensive, case-by-case balancing test." *Id.* (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)). Courts have further noted that section 362(d)(1) is intended to be applicable to situations in which parties seek to go forward with proceedings in another tribunal. *Id.* Indeed, the legislative history states that "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." H.R. Rep. No. 95-595 at 341 (1977); *see also id.* at 343-44 (finding that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another forum").

29.     In order to determine whether allowing litigation to proceed in its original forum is appropriate, courts in this District generally apply a three-prong balancing test. *In re The SCO Grp.*, 395 B.R. at 857. In particular, courts consider "(1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted." *In re Continental Airlines, Inc.*, 152 B.R. 420, 424 (D. Del. 1993) (citing *In re Rexene Prods Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

30.     All three factors strongly support modifying the stay to allow the Chancery Court Action to proceed. There is no prejudice to the Debtor if the stay is modified. In the Motion to Dismiss Ruling, this Court already found that dismissal was warranted to allow the Chancery Court Action to run its course. (*See* Motion to Dismiss Ruling at 19:25-20:2 ("I would expect

16

that any future filing would occur after the completion of the Chancery Court litigation and the omnibus agreement's asset transfers.").)  SeeCubic, however, will face significant prejudice as the continuing overhang of these successive legal proceedings has a real and meaningful impact on SeeCubic's ability to operate its business and maintain necessary relationships and trust required from its vendors, customers, and other stakeholders.  Relief from the stay will simply carry out the intent and purpose of the Dismissal Order, by allowing the Chancery Court Action to proceed.  Finally, SeeCubic is very likely to prevail in the Chancery Court if the stay is modified.  Both this Court and the Chancery Court have acknowledged that a mandatory injunction is likely.  (*See id.* at 19:12-16 (explaining that the Chapter 11 Case was "designed to stop SeeCubic and the debtor's secured creditors from fully implementing the omnibus agreement, to unravel it and to avoid the Chancery Court's order and, v*ery likely, a mandatory injunction.*" (emphasis added)); Chancery Opinion at *24 ("Were it necessary to grant a mandatory injunction to enforce the Omnibus Agreement, then the record would be sufficiently clear to support it.").)  Accordingly, to the extent the Court determines that this Chapter 7 Case should proceed, the stay should be modified to allow the Chancery Court Action to continue.

## NOTICE

31.     Notice of the Motion will be given to: (a) the U.S. Trustee, (b) counsel to the Debtor in the Appeal, (c) counsel to the Petitioning Creditors, (d) the alleged Debtor, and (e) all parties that have requested notice in the Chapter 11 Case pursuant to Local Bankruptcy Rule 2002-1(b).  Under the specific facts and circumstances of this case, Movants submit that no other or further notice should be required.

## CONCLUSION

Movants respectfully request that this Court enter the Order, substantially in the form filed herewith, granting dismissal of this Chapter 7 Case and, in the alternative, granting relief from the automatic stay, and entering such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       May 27, 2021

| ROBINSON & COLE | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
|---|---|
| By: */s/ Davis Lee Wright* | */s/ Joseph O. Larkin* |
| Davis Lee Wright (No. 4324) | Joseph O. Larkin (I.D. No. 4883) |
| James F. Lathrop (No. 6492) | Carl T. Tullson (I.D. No. 6704) |
| 1201 N. Market Street, Suite 1406 | Jason M. Liberi (I.D. No. 4425) |
| Wilmington, DE 19801 | 920 N. King Street, One Rodney Square |
| Telephone: (302) 516-1700 | Wilmington, Delaware 19801 |
|  | Telephone: (302) 651-3000 |
| -and- |  |
|  | - and - |
| QUARLES & BRADY LLP |  |
| Brittany S. Ogden (*pro hac vice* pending) | Eben P. Colby (*pro hac vice* pending) |
| 33 East Main Street Suite 900 | Marley Ann Brumme (*pro hac vice* pending) |
| Madison, Wisconsin 53703 | 500 Boylston Street, 23rd Floor |
| Telephone: (608) 251-5000 | Boston, Massachusetts 02116 |
|  | Telephone: (617) 573-4800 |
| Brandon M. Krajewski (*pro hac vice* pending) |  |
| 411 East Wisconsin Avenue Suite 2400 | *Counsel for SeeCubic, Inc.* |
| Milwaukee, Wisconsin 53202 |  |
| Telephone: (414) 277-5000 |  |
|  |  |
| Alissa Brice Castañeda (*pro hac vice* pending) |  |
| Gabriel M. Hartsell (*pro hac vice* pending) |  |
| One Renaissance Square |  |
| Two North Central Avenue |  |
| Phoenix, Arizona 85004 |  |
| Telephone: (602) 229-5200 |  |
|  |  |
| *Counsel for SLS Holdings VI, LLC* |  |