## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| Stream TV Networks, Inc., | Case No. 21-10848 (KBO) |
| Alleged Debtor. | **Related Docket Nos.: 5, 6, 11, 12, 22, 26, 27** |

## OMNIBUS REPLY OF SEECUBIC, INC. AND SLS HOLDINGS VI, LLC
## IN SUPPORT OF MOTION FOR AN ORDER DISMISSING
## INVOLUNTARY CHAPTER 7 CASE

SeeCubic, Inc. ("**SeeCubic**") and SLS Holdings VI, LLC ("**SLS**" and, together with SeeCubic, the "**Movants**") by and through their undersigned counsel, submit this omnibus reply (the "**Reply**") in further support of their motion (the "**Motion**")[1] for entry of an order dismissing the involuntary Chapter 7 case (the "**Chapter 7 Case**") of the above-captioned debtor Stream TV Networks, Inc. ("**Stream**" or the "**Debtor**" and, together with the Petitioning Creditors and Visual Technology Innovation, Inc. ("**VTI**"), the "**Objectors**"), and in reply to the *Objection of the Petitioning Creditors to the Emergency Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Involuntary Chapter 7 Case* (D.I. 22, the "**Petitioning Creditors Objection**"); *Visual Technology Innovation, Inc.'s Joinder in Petitioning Creditors' Objection to the Emergency Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing the Involuntary Chapter 7 Case and Request to Adjourn the Emergency Hearing* (D.I. 26, the "**VTI Joinder**"); and the *Joinder and Objection of the Alleged Debtor to the Emergency Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Involuntary Case* (D.I. 27, the "**Debtor Objection**" and, together with the Petitioning Creditors Objection and the VTI Joinder, the "**Objections**").

---

[1] *Emergency Motion of SeeCubic, Inc. and SLS Holdings VI, LLC for an Order Dismissing Involuntary Chapter 7 Case* (D.I. 5).

## PRELIMINARY STATEMENT[2]

1.      If there was any doubt that the commencement of the Chapter 7 Case was simply the next step in Mathu Rajan's and VTI's coordinated bad-faith efforts to obtain the benefits of the automatic stay and thereby interfere with the Chancery Court Action and the Omnibus Agreement, that doubt has been laid to rest.  Indeed, the Petitioning Creditors themselves *admit they are actively coordinating with Stream and VTI* – the entity formed in January 2021 and controlled by Mathu Rajan – to pursue the very same goals of attacking the Omnibus Agreement and the transfers of the Debtor's assets to SeeCubic, thereby effectuating an end-run around both this Court's Motion to Dismiss Ruling and the Chancery Court Action (which, given the Movant's recent filing of their Summary Judgment Reply, can occur as soon as this Chapter 7 Case is dismissed).  (*See* PCO ¶ 4 (arguing that a chapter 7 trustee should be appointed to attack the Omnibus Agreement and related transfers, and admitting a coordinated effort wherein "*funding for the trustee's undertakings is to be provided by VTI*." (emphasis added)).)[3]  And Mathu Rajan has continued, unabated, in his attempts to manipulate these proceedings as evidenced by the ongoing and recent communications (sent from a VTI account) to unsecured creditors offering to "make arrangements to pay your receivables on the Stream TV account" and offering to set up a call with Mathu Rajan.  (*See* Ex. 1.)

2.      Moreover, the Debtor and VTI have joined the Petitioning Creditors Objection, and seek to use this purportedly "involuntary" Chapter 7 Case as the springboard from which

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.  All citations herein to "Ch. 11 Dkt No. __" are to the docket in the Debtor's prior voluntary Chapter 11 Case. Unless otherwise noted, all references to sections herein are to the Bankruptcy Code.  All citations herein to "PCO ¶ __," "DO ¶ __" and "VTIO ¶ __" are to the Petitioning Creditors Objection, the Debtor Objection and the VTI Joinder, respectively.

[3]     *See also* Motion, Ex. D (May 25, 2021 email demonstrating that at least one of the Petitioning Creditors is negotiating with the Debtor – *i.e.*, Mathu Rajan – with respect to promised recoveries for unsecured creditors if they will support the prosecution of the Chapter 7 Case).

Mathu Rajan and VTI can launch a full and complete "re-do" of the Chapter 11 Case and simply disregard the last three months of litigation and this Court's Motion to Dismiss Ruling after a two-day trial held only weeks ago. The Debtor, represented by new counsel, suggests that notwithstanding the Debtor's pending Appeal of the Motion to Dismiss Ruling, the Court should simply convert the "involuntary" Chapter 7 Case to a voluntary chapter 11 case and allow the Debtor to proceed as though this Court's dismissal of the prior Chapter 11 Case never happened. The Debtor promises (yet again) a brand new "fully baked business plan" – to be funded by VTI, of course – which will pay all creditors "in full." (DO ¶ 1.) It is Groundhog Day, with the same unscrupulous and empty promises, proffered by the same parties, and driven again by Mathu Rajan.

        3.      The Court should not be swayed by the purported "features" of the Debtor's "new" proposed plans, including the suggestion of independence that is attendant to the Debtor's alleged hiring of a purported CRO for the business (*see* DO ¶ 1 (Debtor "agreed to retain" a CRO)),[4] or that Mr. Rajan and the Debtor have somehow "rectif[ied]" the bad faith that was the root cause of the dismissal of their first Chapter 11 Case (*see id.*). These hollow claims of illusory investments, governance changes and business opportunities that are "imminent" in perpetuity cannot overcome the core finding of the Motion to Dismiss Ruling – Mr. Rajan's abuse of the bankruptcy process to obtain a litigation advantage in Chancery Court. The Debtor's "apologies" cannot cure the blatant acts of collusion and misconduct that *have been*

---

[4]    Despite the purported involvement of Mr. Brownstein, it is clear that Mr. Rajan is still the only party with a meaningful role in the prosecution of these cases. The DIP commitment letter from VTI that is appended to the Debtor Objection is addressed to Mr. Rajan (as CEO of the Debtor) and signed by Mr. Rink (as representative of VTI – Mr. Rajan's entity), and Mr. Rajan's name is also featured prominently on the signature block of the DIP term sheet on behalf of the Debtor opposite Mr. McCarthy, the same individual that negotiated the illusory DIP in the Chapter 11 Case. (*See* DO, Ex. A.) As the Court is aware, the concept of a CRO was also raised at trial on the First Motion to Dismiss and, thus, is not new, and certainly insufficient to justify another chapter 11 filing.

*admitted* by the Objectors here, and which now permeate this Chapter 7 Case.  This conduct alone requires dismissal of the Chapter 7 Case and, further, entry of an order barring future serial bankruptcy filings *by all parties* until the Chancery Court Action (and the Appeal) are concluded, in order to finally allow the Chancery Court to resolve the parties' disputes with respect to the Omnibus Agreement in accordance with this Court's Motion to Dismiss Ruling and Dismissal Order.

4.    Setting aside the glaring bad faith and collusion that would independently warrant dismissal, the Objections also fail to meaningfully address or counter the multiple legal grounds for dismissal of the Chapter 7 Case established in the Motion.  Instead, the Objections resort to a rehashing of the same arguments that were repeatedly advanced by Mathu Rajan in the Chapter 11 Case and squarely considered, and rejected, by this Court in its Motion to Dismiss Ruling. Even if this Court retained jurisdiction over the Chapter 7 Case despite the pending Appeal, the Objectors provide no basis (because there is none) for the Court to depart from its prior factual findings and legal determinations in the context of this Chapter 7 Case that was commenced as a coordinated end-run around the Court's Motion to Dismiss Ruling currently on appeal before the District Court.

5.    First, the Objectors cannot, and do not, refute the fact that the pending Appeal of this Court's order dismissing the Chapter 11 Case for "cause" under section 1112(b) divests this Court of jurisdiction to consider the Chapter 7 Petition during the pendency of the Appeal. Indeed, counsel for the Petitioning Creditors initially states that they were unaware of the pending Appeal when the involuntary petition was filed.  (*See* PCO ¶ 1.)  But even taking this at face value, the Petitioning Creditors' lack of actual knowledge of the Appeal has no bearing whatsoever on the legal effect of the Appeal on this Court's jurisdiction.  The Objections offer

no discussion of the applicable case law or indeed any explanation as to how the pending Appeal of the Motion to Dismiss Ruling does not divest this Court of jurisdiction over the proposed Chapter 7 Case.  This is a casebook example of why the divestiture rule exists, as there is no explanation of how this Court can preside over a new bankruptcy case when the Debtor and VTI are simultaneously seeking reversal of the Motion to Dismiss Ruling that dismissed the prior Chapter 11 Case "for cause."  This Court should not be distracted by the intentional misdirection and obfuscation presented by the Objections.

6.      Second, the Objectors fail to respond substantively to the grounds for dismissal under section 707 demonstrated by Movants.  Instead, as discussed further above, the Objections largely bolster the already-strong evidence of bad faith on the part of the Petitioning Creditors in filing the Chapter 7 Petition, proffer a series of recycled arguments, and present this Court with the same plan for a reorganization for Stream that was previously rejected by this Court, all of which makes clear that these proceedings were commenced simply to pursue a "re-do" of the Chapter 11 Case at the behest of Mathu Rajan.  The Chapter 7 Case should be dismissed.

## REPLY

**I.      THE OBJECTORS FAIL TO MEANINGFULLY CONTEST THE MOVANTS' ARGUMENTS IN FAVOR OF DISMISSAL**

**A.      The Court Lacks Jurisdiction Due to the Pending Appeal of the Dismissal Order**

7.      *First*, the Objectors, in conclusory fashion and largely without citation, suggest that the divestiture rule does not "apply" (DO ¶¶ 16-17), or does not deprive this Court of jurisdiction over this Chapter 7 Case because "the issue of a chapter 7 liquidation" is not on Appeal (PCO ¶ 1).  This is simply incorrect.  The Debtor is proceeding with its Appeal of this Court's Dismissal Order, which dismissed the Debtor's Chapter 11 Case for cause pursuant to section 1112(b).  That statute provides, in relevant part, that the Court may dismiss a chapter 11

case or convert it to a case under chapter 7 "for cause," "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). On June 4, 2021, the Debtor filed the *Appellants' Statement of Issues to be Presented on Appeal and Designation of Record on Appeal* (Ch. 11 Dkt. No. 207, the "**Statement of Issues on Appeal**"). Thus, the Court lacks jurisdiction to entertain issues implicated by the Appeal.

8.      While the Petitioning Creditors argue that "the issue of a chapter 7 liquidation" is not expressly identified as one of the six issues in the Debtor's Statement of Issues on Appeal,[5] that is not the applicable legal standard. The standard is whether any issue will "so impact the appeal so as to interfere with or effectively circumvent the appeal process." *In re G-I Holdings, Inc.*, 568 B.R. 731, 763 (Bankr. D.N.J. 2017).

9.      While bankruptcy appeals frequently present interesting issues such as the finality of bankruptcy court orders and whether a particular appeal is interlocutory, this case could not be more clear cut. As explained in the Motion, by holding that dismissal of the Chapter 11 Case was warranted, this Court necessarily decided that dismissal *rather than conversion* was "in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).[6] Allowing this Chapter 7 Case to proceed, or allowing the Debtor to file *another* chapter 11 case, would be akin to granting the alternative relief this Court denied, or revisiting the Court's conclusion that dismissal was warranted and the findings underlying that holding – in the face of the pending Appeal that has removed the Motion to Dismiss Ruling to District Court.[7]

---

[5]     *See* Statement of Issues on Appeal § A.

[6]     *See also* Motion to Dismiss Ruling at 10:6-8.

[7]     The Petitioning Creditors also ignore the second clear overlap identified in the Motion: the Chapter 7 Petition requests relief that is opposed to, and would moot, the relief sought by the Debtor in the Appeal. Indeed, the Petitioning Creditors Objection heavily relies on the purported benefits that a "disinterested trustee" in a liquidation scenario would have for creditors and the estate. (PCO ¶ 2.) But the Debtor is pursuing on Appeal a

10.     Moreover, the Debtor's argument that "allowing the Debtor to move forward with respect to the current Chapter 7 Case would negate the necessity of the appeal and bring closure to the first filed case" (DO ¶ 17), is illogical because (a) chapter 7 involves the appointment of a trustee, and thus the Debtor would not be "mov[ing] forward" with anything (including the purportedly new plan); (b) the Debtor has not discontinued its Appeal, and is thus still pursuing a reorganization in the District Court; and (c) the Debtor is apparently now pursuing *another* reorganization under chapter 11 in this Court. Relatedly, the Petitioning Creditors suggest the divestiture rule is not applicable because "[i]n the event of a reversal or remand, the Bankruptcy Court may consider which case prevails and if a conversion from one chapter to another is warranted." (PCO ¶ 1.)

11.     This concept of simultaneous bankruptcy cases pending for the same debtor that the Objectors advance is precisely the sort of "confusion and inefficiency" the divestiture rule is designed to eliminate. *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985). As this Court previously explained, the logical progression is to allow the Chancery Court Action (and the Appeal) to conclude, and the Omnibus Agreement to be fully consummated, before the Debtor (or its creditors) seeks relief under the Bankruptcy Code. (*See* Motion to Dismiss Ruling at 19:25-20:2.) Dismissal is warranted to *finally* allow that to occur.[8]

---

reorganization of its business under current management. *See* 11 U.S.C. § 1107(a). Thus, the Chapter 7 Case necessarily implicates issues that will interfere with or undermine the Appeal.

[8]     The Objectors do not contest this Court's ability to enter an order barring future bankruptcy filings in order to "enforce or implement" its Dismissal Order. *In re Pursuit Cap. Mgmt., LLC*, No. 14-10610 (LSS), 2017 WL 2537234, at *6 (Bankr. D. Del. June 9, 2017). Thus, in the event this Court finds dismissal warranted, it can and should do so to ensure the Dismissal Order is not further frustrated or delayed.

**B.**      **The Objectors Crystallize Movants' Showing of "Cause" for Dismissal Under Section 707**

12.      The Objectors fail to substantively address the legal standards applicable to Movants' request for dismissal under section 707 for "cause" or the ample supporting case law identified in the Motion.  *See, e.g.*, 11 U.S.C. § 707(a).  Instead they advance arguments recently made by Mathu Rajan to the Chancery Court relating to the purported invalidity of the Omnibus Agreement as reasons why this Chapter 7 Case should proceed as an alternate venue in which the Omnibus Agreement can be challenged, or purportedly justifying a second chapter 11 case to again prevent its consummation.  (PCO ¶ 5; DO ¶¶ 18-19.)  Indeed, the Petitioning Creditors go as far as to "incorporate[] by reference," in its entirety, a letter submitted by Mathu Rajan to the Chancery Court that outlines purported deficiencies with the Omnibus Agreement.  (PCO ¶ 5.) The Petitioning Creditors are thus actively, and in a coordinated fashion, adopting and advancing the same positions argued by the very party this Court has already determined to have acted in bad faith in connection with the Chapter 11 Case.  (*See* Motion to Dismiss Ruling at 15:14-19 (noting Mr. Rajan's behavior "support[s] the conclusion that Stream did not come to this court as the honest but unfortunate debtor to preserve and maximize value for its stakeholders").)[9]  And the Debtor Objection predictably "joins in" (and restates verbatim) certain of the Petitioning Creditors' arguments.  Indeed, *the Debtor's* filing actually argues that the *Petitioning Creditors* are not engaged in collusion (*see* DO ¶ 23), immediately after a paragraph that was copied-and-pasted wholesale from the Petitioning Creditors Objection (*Compare id.* ¶ 22, *with* PCO ¶ 9).

---

[9]      Relatedly, the Petitioning Creditors also note that counsel to the Debtor in the Chancery Court Action recently withdrew, and suggest that appointment of a chapter 7 trustee would enable the trustee to retain substitute counsel in the Chancery Court Action.  (*See* PCO ¶ 6.)  They ignore the fact that, assuming their proposed financing arrangement were even logical in the chapter 7 context (it is not), this substitute counsel would then be paid by Mr. Rajan (through VTI).  But this Chapter 7 Case is not necessary so that Mr. Rajan can retain and compensate new counsel for the Debtor in the Chancery Court Action.

13.     And the letter appended to the Petitioning Creditors Objection is just one of the many recent examples of Mathu Rajan's ongoing efforts to "abuse[] the provisions, purpose, [and] spirit of bankruptcy law" by skirting the Dismissal Order, and indirectly obtaining the benefit of the Chapter 7 Case automatic stay.  *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). As noted in the Motion, Movants filed their Summary Judgment Reply in the Chancery Court Action on May 22, 2021, several days after the Dismissal Order was entered.  Over the next four days, Mathu Rajan filed three "letters" with the Chancery Court that exhaustively outline purported reasons why the Chancery Court should lift its preliminary injunction order and invalidate the Omnibus Agreement.  (*See* Motion, Exs. B-C; PCO, Ex. A.)  Moreover, on June 4, 2021 – while SeeCubic's proverbial hands were tied by virtue of the automatic stay established in connection with the Chapter 7 Case – Mathu Rajan filed a motion to set aside the Chancery Court's preliminary injunction order.  And, predictably, the Debtor (or Mr. Rajan) has now filed a *joinder* to the Petitioning Creditors Objection, and supports the imposition of this involuntary Chapter 7 Case or, through some unidentified procedural mechanism, a new chapter 11 case. This conduct alone necessarily means that the Petitioning Creditors (and the remaining Objectors) cannot meet their burden to establish that the Chapter 7 Case was filed in good faith. *See, e.g.*, *In re Tamecki*, 229 F.3d at 207 ("Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith.").  Instead, the Petitioning Creditors Objection (coupled with the Debtor Objection and the VTI Joinder) actually bolsters the evidence that this Chapter 7 Petition is simply a continuation of the bad faith that pervaded the Chapter 11 Case.

14.     In an attempt to counter this clear evidence of bad faith, the Objectors proffer a number of contentions that amount to nothing more than arguing that "this time will be

9

different."  For instance, the Petitioning Creditors attempt to undercut the "avalanche of resulting administrative expenses" that this Court found will face the estate in a chapter 7 scenario (*see* Motion to Dismiss Ruling at 18:2-9), by suggesting they have obtained third-party funding for the Chapter 7 Case.  (PCO ¶ 4.)  Setting aside the fact that such financing arrangements are counter to the very purpose of an involuntary chapter 7 liquidation, this argument is independently incredible because the proposed financier is none other than VTI (*see id.*), which this Court already found is controlled by Mathu Rajan.  (*See* Motion to Dismiss Ruling at 14:20-22 ("Mr. Rajan established VTI of which he is the controlling shareholder, president, and until recently the sole director.").)

15.     The Debtor Objection responds by expressing its "appreciate[ion] [for] this Court's prior concerns," in a filing that requests authorization to pursue the same relief that this Court denied it less than a month ago (*i.e.*, a voluntary chapter 11 case).  (DO ¶ 25.)  Setting aside the fact that this proposed chapter 11 plan is *not before this Court* on the Movant's Motion to dismiss the *Chapter 7 Case*, it is anything but new.  Indeed, the Debtor explains it has "made a good faith effort to rectify" the Court's concerns (*id.*), by promulgating effectively the same chapter 11 plan that was just dismissed: (a) funded by VTI (or Mr. Rajan), (b) with a CRO it has "agreed to retain" (or, in other words, still has not yet retained) (*see id.* ¶ 1), (c) involving an unidentified business plan that is undoubtedly the same as that advanced by the Debtor in the Chapter 11 Case, and (d) with the purported full recovery for creditors advocated by the colluding Petitioning Creditors (*see* Motion, Ex. D).  This is the exact same plan VTI advanced at trial on the First Motion to Dismiss,[10] and premised upon the hollow promises that were

---

[10]    *See, e.g.*, Hr'g Tr., at 153:4-16, *In re Stream TV Networks, Inc.*, No. 21-10433 (KBO) (Bankr. D. Del. May 11, 2021) (Ch. 11 Dkt. No. 195) (Counsel to VTI: "**VTI . . . is committed to funding a DIP** and to being a plan sponsor with the goal of a full recovery for all of the debtor's creditors, but it's not going to be a blank check. There is going to be a DIP budget, there's going to be reporting requirements, there's going to be milestones,

already squarely rejected by this Court in dismissing the Chapter 11 Case.[11]   The Debtor also

promises that it will now "comply with all provisions of the Bankruptcy Code and requirements

of the Office of the United States Trustee" (DO ¶ 25), despite repeatedly demonstrating its

indifference to the prior orders and rulings of this Court and the Chancery Court.   In sum, this

plan is anything but new, is illusory, and is insufficient to overcome the evidence of bad faith

before this Court.[12]

      16.    The remaining assertions advanced by the Objectors were squarely addressed (and

rejected) by this Court in the Chapter 11 Case or can be summarily disposed of at this juncture.[13]

*First*, the Objectors attempt to sway this Court from the inescapable reality that this is effectively

---

    **there's going to be a CRO of the debtor**; there's going to be a process put in place with funding to allow the debtor to restructure, reorganize, and ultimately emerge from bankruptcy with exit financing that will provide for a **full recovery of the debtor's creditors** and allow the debtor to move forward with proper capitalization." (emphasis added)).

[11]  *See* Motion to Dismiss Ruling at 15:20-16:3 (finding Mr. Rajan's conduct could not be cured by the Debtor's and VTI's "plans and ability to put forth a reorganization that would lead to payment, in full, of its creditors including SLS and Hawk if Stream would be permitted to continue with its filing"); *id.* at 16:18-17:1 (explaining that the "lynchpin of any restructuring centers around rejecting the omnibus agreement, stopping all Ultra-D asset transfers to the secured lenders, recapturing the assets that have been transferred and transferring them to VTI, an entity currently controlled and owned by Mr. Rajan" which actions "are plainly at odds and cannot be squared with the Chancery Court's order and its prohibition on the debtor claiming ownership to the assets"); *id.* at 17:2-5 (noting that "whether a benefit can even be achieved for unsecured creditors, if this case were permitted to proceed, is highly questionable given the enormous hurdles that must be overcome"); *id.*at 17:21-25 ("While VTI may have one or more parties that are interested in or committed to providing it with investment it is unclear whether, when and in what amount that funding will materialize, and whether, when and how much Stream will actually receive.").

[12]  As active litigants in the trial on the First Motion to Dismiss, the Debtor and VTI are clearly bound by this Court's prior rulings.  While the Petitioning Creditors may not have been directly involved in that litigation, the doctrine of offensive non-mutual issue preclusion, as articulated by the Supreme Court in *Parklane Hosiery Co. v. Shore*, suggests that this Court's findings may also be binding on the Petitioning Creditors here.  *See* 439 U.S. 322, 331 (1979).  Regardless, the same reasoning underlying the Court's resolution of these identical issues in the Chapter 11 Case applies in these proceedings, and the Objectors have articulated no reason why this Court should depart from its prior conclusions.

[13]  The Petitioning Creditors Objection cites to the "Declaration of Stephen Blumenthal" in support of the Petitioning Creditors' arguments regarding the purported valuation of the Debtor and its business.  (*See* PCO ¶ 3 n.1.)  Setting aside the fact that, as of the filing of this Reply, this Declaration has not been filed and, in any event, is well beyond the deadline for responses and objections to the Motion set by this Court (as were all of the Objections) (*see* D.I. 11 (setting objection deadline for June 6, 2021 at noon)), it is clearly a self-serving, made-for-litigation contrivance that this Court should not consider and should not grant any weight.

a two-party dispute which this Court has already concluded should proceed in Chancery Court. They allege that (1) the Petitioning Creditors' interests were not sufficiently represented and/or protected in the Chapter 11 Case (*see* PCO ¶¶ 2-3, 11; DO ¶ 19), and (2) they are also not parties to the Omnibus Agreement and the Chancery Court Action (*see* PCO ¶¶ 9-10; DO ¶ 22).[14]  As an initial matter, the contention that the Petitioning Creditors were not "active litigants in the chapter 11 motion to dismiss matter" is incorrect.  The UCC was appointed in the Chapter 11 Case to act as a fiduciary for, and represent the interests of, <u>all</u> of the Debtor's unsecured creditors.  *See, e.g.*, *Westmoreland Hum. Opportunities, Inc. v. Walsh*, 246 F.3d 233, 256 (3d Cir. 2001) ("We have construed § 1103(c) as implying a fiduciary duty on the part of members of a creditor's committee . . . toward their constituent members." (citations omitted)).  And Jamuna Travels, Inc. – *one of the Petitioning Creditors* – sat on the UCC (*see* Ch. 11 Dkt. No. 121) and voiced an objection to the UCC's settlement with SeeCubic (the "**Settlement**") at the outset of trial on the First Motion to Dismiss.[15]

17.    As this Court explained in its Motion to Dismiss Ruling, after conducting its investigation, the UCC – the statutory representative of the Petitioning Creditors – determined that this case is a prime example of the proverbial "two-party dispute" for which courts have routinely granted dismissal[16] (*see* Motion to Dismiss Ruling at 18:10-12), and accordingly concluded that dismissal in favor of the Chancery Court Action and a settlement with SeeCubic was in the best interest of the Debtor's unsecured creditors (*see id.* at 18:18-20 (noting UCC

---

[14]  Movants note that the Debtor feels the need to advance the same arguments presented by the Petitioning Creditors, about *those creditors'* involvement (or lack thereof) in the Chapter 11 Case and the Chancery Court Action.  This blatant copying-and-pasting of arguments – which have nothing to do with *the Debtor* – simply underscores the bad faith collusion here.

[15]  *See* Hr'g Tr. at pp. 6-8, *In re Stream TV Networks, Inc.*, No. 20-10766 (KBO) (Bankr. D. Del. May 10, 2021) (Chapter 11 Dkt. No. 194).

[16]  *See, e.g.*, *In re Murray*, 900 F.3d 53, 61 (2d Cir. 2018) (affirming dismissal under section 707, citing bankruptcy court's finding that the "petition was part of a long-running, two-party dispute").

Settlement "may achieve value for Stream's creditors")). This Court afforded the UCC's findings "great consideration and weight" in reaching its decision, particularly given the Chapter 11 Case was purportedly "commenced for the benefit of the committee's constituency to whom the committee owes a fiduciary duty" (*id.* at 18:12-17), and ultimately concluded that the Settlement was the result of the UCC "us[ing] the circumstances presented to the advantage of the creditors" (*id.* at 19:1-3). The Petitioning Creditors' dissatisfaction with the UCC's decisions, or the UCC's governance and the process it used to reach those decisions, is insufficient to justify the imposition of this Chapter 7 Case so that the Petitioning Creditors may seek a second bite at the apple. In short, the Petitioning Creditors' interests were represented and vigorously advanced by the UCC in the Chapter 11 Case, and the Petitioning Creditors were afforded the opportunity – and, in fact, took advantage of that opportunity – to voice their concerns in that proceeding.

18.     Further, the Objectors' contention that the Petitioning Creditors are not parties to the Omnibus Agreement or the Chancery Court Action (*see* PCO ¶¶ 3, 9; DO ¶ 22) has no bearing on the Motion to dismiss the Chapter 7 Case, and is simply the result of the parties' negotiated-for priorities vis-à-vis the Debtor's assets. As the Chancery Court noted, the liens of the Debtor's secured lenders extended to all of the Debtor's assets,[17] and the Omnibus Agreement contemplated a corresponding transfer of "substantially all of Stream's prepetition assets." (Motion to Dismiss Ruling at 9:9-10.) The Petitioning Creditors are not parties to the Omnibus Agreement because their agreement was not necessary to effectuate the transfers; their claims, like all of Stream's unsecured creditors, are subject (and inferior) to the interests of the Debtor's secured creditors. And they are not parties to the Chancery Court Action – the

---

[17]     *See* Chancery Opinion at *3 (finding that Stream pledged "all of its assets and the assets of its wholly owned subsidiaries" as security for the SLS Notes, and "all of its assets as security for the Hawk Notes").

litigation commenced by Mr. Rajan (or "Bound by . . . the Chancery Court Opinion" (PCO ¶ 9; DO ¶ 22)) – because they are not parties to that agreement.  As this Court explained, *after* the Omnibus Agreement is fully effectuated, the Debtor (or its creditors) might return to bankruptcy court to liquidate or reorganize the Debtor and whatever assets may remain.  (*See* Motion to Dismiss Ruling at 19:25-20-2.)

19.  *Second*, judicial economy weighs heavily in favor of dismissal, particularly where the purported reasons for the Chapter 7 Case proffered by the Objectors have been previously rejected by this Court.  Indeed, the Petitioning Creditors pin their hopes of recovery on the same speculative, costly litigation advanced by the Debtor and rejected by this Court as a basis for the Chapter 11 Case.  (*See* PCO ¶ 4 (suggesting trustee could pursue claims, including fiduciary claims against directors for executing, and fraudulent transfer litigation to unwind, the Omnibus Agreement).)  This Court found that such litigation would prove incredibly costly for the Debtor's estate, *and thus its creditors*, for only a speculative opportunity of recovery.  (*See* Motion to Dismiss Ruling at 17:2-5, 17:12-20 ("[W]hether a benefit can even be achieved for unsecured creditors . . . is highly questionable given the enormous hurdles that must be overcome.").)  Moreover, because the Omnibus Agreement transferred effectively all of the Debtor's assets to SeeCubic, and thus no value remains for unsecured creditors – (*see id.* at 11:25-12:5 (Debtor had "no material assets beyond those which are the subject of the omnibus agreement")) – these significant costs would only serve to prejudice the Movants without providing new or additional value to *anyone*.[18]  And for the reasons set forth above, this Court has already rejected the Debtor's 'new' plan of reorganization.

---

[18]  *See In re Lots by Murphy, Inc.*, 430 B.R. 431, 436 (Bankr. S.D. Tex. 2010) (dismissing chapter 7 case where there were no assets to satisfy creditor claims and case would thus not serve the purposes underlying the Bankruptcy Code, noting that "[n]either the bankruptcy courts, nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions" (citation omitted)).

20.     Collectively, these factors, and the indisputable evidence of collusion between the Petitioning Creditors, VTI and the Debtor, make clear that the Chapter 7 Petition (and the Debtor's request for an opportunity to file another chapter 11 case) is just another step in Mr. Rajan's "continued pattern of effort to nullify, undermine, and/or interfere with the omnibus agreement, vitiate the purpose and effect of the Chancery Court's order, and to maintain ownership and control over the assets of the debtor for his own benefit" (Motion to Dismiss Ruling at 13:20-14:1, 15:14-19), by weaponizing the automatic stay[19] for his benefit and circumventing the Dismissal Order.  Dismissal of the Chapter 7 Case is warranted.

## II.     IF THE CHAPTER 7 CASE PROCEEDS, THE OBJECTORS HAVE SHOWN NO REASON WHY RELIEF FROM THE AUTOMATIC STAY IS NOT WARRANTED

21.     The Petitioning Creditors do not contest – indeed, they do not even mention – the Movants' alternative request for relief from the automatic stay for "cause" under section 362(d), in the event this Court determines that this Chapter 7 Case should proceed.  The Debtor responds by reiterating its belief that the purportedly new plan of reorganization it hopes to prosecute with VTI justifies imposition of the automatic stay *in a new chapter 11 case that is not presently before this Court*.  (*See* DO ¶¶ 24-26.)  These arguments are completely irrelevant to whether or not this Court should immediately grant Movants relief from the stay to prosecute the Chancery Court Action if this Court determines that *this Chapter 7 Case* should proceed.  But, in any event, for the reasons discussed above, this new plan is a red herring, and is insufficient to warrant **any** relief, let alone an extension of the automatic stay to continue Mr. Rajan's quest to delay entry of judgment in Chancery Court.  This Chapter 7 Case should be dismissed.  But, for

---

[19]  *See In re Overmyer*, 32 B.R. 597, 601 (Bankr. S.D.N.Y. 1983) ("[A] court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon.  A debtor should not be permitted to reap the benefits of litigation in one court, but circumvent the burdens in another forum." (citation omitted)).

the reasons articulated in section III of the Motion, relief from the stay is clearly warranted if it proceeds. And, as explained below, the Debtor's request to delay for "full motion practice and discovery" (*id.* ¶ 24), prior to granting such relief should also be denied.

### III. THERE IS NO REASON TO ADJOURN THE HEARING OR DELAY DISMISSAL OF THIS CHAPTER 7 CASE

22.    Finally, VTI asks that this Court adjourn the hearing to allow it to negotiate the "potential financing agreement" for, and file a "postpetition financing motion" in, these chapter 7 *liquidation proceedings* or the successive, not-yet-filed chapter 11 case. (VTIO ¶ 3.) VTI asks this Court to apply Bankruptcy Rule 2002(a)(4), which ordinarily requires 21 days notice for a "hearing on dismissal of" a chapter 7 case. *See* Fed. R. Bankr. P. 2002(a)(4). However, the Bankruptcy Rules do not prohibit the Court from shortening this period. *Cf.* Fed. R. Bankr. P. 9006(c)(2). Accordingly, on May 27, 2021, Movants filed a motion to shorten that notice period pursuant to Bankruptcy Rule 9006(c)(1) (D.I. 6, the "**Motion to Shorten**"), which was served on the Debtor, counsel to the Debtor in the Chapter 11 Case and the Appeal, Mr. Rajan (who controls VTI), and counsel to the Petitioning Creditors. (*See* Motion to Shorten, Cert. of Serv.) No objection to the Motion to Shorten was filed. Accordingly, on May 28, 2021, this Court granted the Motion to Shorten, and established a hearing on the Motion for this Thursday (*see* D.I. 11), which order was also served, along with a notice of the hearing (*see* D.I. 12, the "**Hearing Notice**") on the same parties. (*See* Hearing Notice, Cert. of Serv.) In short, the Objectors had an opportunity to oppose the Motion to Shorten. They did not, and they should not be permitted to do so less than 48 hours in advance of the hearing. Not only would such an adjournment be futile given the threshold jurisdictional defects here, but VTI has demonstrated no reason for any additional delay and, contrary to their assertions, such delay will necessarily only prejudice Movants by once again delaying resolution of the Chancery Court Action.

**CONCLUSION**

Movants respectfully request that this Court enter the Order, substantially in the form filed with the Motion, granting dismissal of this Chapter 7 Case and, in the alternative, granting relief from the automatic stay, and entering such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
          June 9, 2021

| | |
|---|---|
| ROBINSON & COLE<br><br>By: */s/ Davis Lee Wright*<br>Davis Lee Wright (No. 4324)<br>James F. Lathrop (No. 6492)<br>1201 N. Market Street, Suite 1406<br>Wilmington, DE 19801<br>Telephone: (302) 516-1700<br><br>-and-<br><br>QUARLES & BRADY LLP<br>Brittany S. Ogden (admitted *pro hac vice*)<br>33 East Main Street Suite 900<br>Madison, Wisconsin 53703<br>Telephone: (608) 251-5000<br><br>-and-<br><br>Alissa Brice Castañeda (admitted *pro hac vice*)<br>Gabriel M. Hartsell (admitted *pro hac vice*)<br>Michael Galen (admitted *pro hac vice*)<br>One Renaissance Square<br>Two North Central Avenue<br>Phoenix, Arizona 85004<br>Telephone: (602) 229-5200<br><br>*Counsel for SLS Holdings VI, LLC* | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br><br>*/s/ Joseph O. Larkin*<br>Joseph O. Larkin (I.D. No. 4883)<br>Carl T. Tullson (I.D. No. 6704)<br>Jason M. Liberi (I.D. No. 4425)<br>920 N. King Street, One Rodney Square<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-3000<br><br>- and -<br><br>Eben P. Colby (admitted *pro hac vice*)<br>Marley Ann Brumme (admitted *pro hac vice*)<br>500 Boylston Street, 23rd Floor<br>Boston, Massachusetts  02116<br>Telephone: (617) 573-4800<br><br>*Counsel for SeeCubic, Inc.* |