```
1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2

3   IN RE:                        .  Chapter 7
                                   .
4   STREAM TV NETWORKS, INC.,     .  Case No. 21-10848(KBO)
                                   .
5                                  .
                                   .  824 Market Street
6            Alleged Debtor.       .  Wilmington, Delaware 19801
                                   .
7                                  .  Thursday, September 30, 2021
    . . . . . . . . . . . . . . .  .  10:01 a.m.
8
                        TRANSCRIPT OF ZOOM HEARING
9              BEFORE THE HONORABLE KAREN B. OWENS
                  UNITED STATES BANKRUPTCY JUDGE
10
    APPEARANCES:
11
    For the Debtor:          Brenna A. Dolphin, Esquire
12                            Chris Ward, Esquire
                              POLSINELLI
13                            222 Delaware Avenue
                              Suite 1101
14                            Wilmington, Delaware 19801

15  For SeeCubic, Inc.:      Carl T. Tullson, Esquire
                              Joseph O. Larkin, Esquire
16                            Jason M Liberi, Esquire
                              SKADDEN, ARPS, SLATE,
17                             MEAGHER & FLOM LLP
                              920 North King Street
18                            One Rodney Square
                              Wilmington, Delaware 19801
19
    (APPEARANCES CONTINUED)
20

    Electronically
21  Recorded By:             Lisa Brown, ECRO

22  Transcription Service:   Reliable
                              1007 N. Orange Street
23                            Wilmington, Delaware 19801
                              Telephone: (302) 654-8080
24                            E-Mail:  gmatthews@reliable-co.com

25  Proceedings recorded by electronic sound recording:
    transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For SeeCubic, Inc.:        Eben P. Colby, Esquire
                           Marley Ann Brumme, Esquire
                           SKADDEN, ARPS, SLATE,
                            MEAGHER & FLOM LLP
                           500 Boylston Street, 23rd Floor
                           Boston, Massachusetts 02116

For SLS Holdings,
VI, LLC:                   Davis Lee Wright, Esquire
                           James F. Lathrop, Esquire
                           ROBINSON & COLE
                           1201 North Market Street, Suite 1406
                           Wilmington, Delaware 19801

                           - and -

                           Brittany S. Ogden, Esquire
                           QUARLES & BRADY LLP
                           33 East Main Street, Suite 900
                           Madison, Wisconsin 53703

                           Brandon M. Krajewski, Esquire
                           QUARLES & BRADY LLP
                           411 East Wisconsin Avenue
                           Suite 2400
                           Milwaukee, Wisconsin 53202

                           Gabriel M Hartsell, Esquire
                           QUARLES & BRADY LLP
                           One Renaissance Square
                           Two North Central Avenue
                           Phoenix, Arizona 85004

1                                    INDEX

2    CONTESTED MATTERS:                                        PAGE

3    Agenda
     Item 1:      Motion for Fees: Motion of SeeCubic, Inc.     4
4                 and SLS Holdings VI, LLC for Fees and
                  Expenses Against Stream TV Networks, Inc.
5                 and Mathu Rajan [Docket No. 51]
                  (Date Filed 8/20/21)
6

7    Court's ruling                                          30, 33

8    Transcriptionist's Certificate                            34

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commenced at 10:01 a.m.)

2            THE COURT:  Good morning, everyone.  This is Judge

3   Owens.  We're gathered virtually for a hearing in the Chapter

4   7 case of Stream, we're here on a motion for fees.

5            Why don't I turn the podium over to the movant.

6            MR. TULLSON:  Good morning, Your Honor, Carl

7   Tullson of Skadden Arps on behalf of SeeCubic.

8            Your Honor, I know you've read our papers.  We

9   filed our reply on Monday at Docket Number 52.  We filed an

10  amended agenda last night at Docket 60; that included two

11  additional filings, a filing by SLS with respect to its fees

12  and expenses, and a corrected version of Exhibit C to our

13  reply.

14            I'd be happy to answer any initial questions you

15  may have on our motion for fees, but otherwise, if it's okay

16  with you, I'd like to provide a few opening remarks and then

17  focus my argument on some of the legal points raised in

18  Stream's objection.

19            THE COURT:  Okay, that would be fine.  Please go

20  ahead.

21            MR. TULLSON:  All right, thank you.

22            Your Honor, I think it's worth highlighting that

23  SeeCubic's products are still in the developmental stage and

24  SeeCubic is a pre-revenue company.  That means that every

25  dollar the movants have spent and continue to spend fighting

1   bad faith litigation tactics undertaken because of Mathu

2   Rajan is a dollar that SeeCubic can't use to develop its

3   products to take them to market.  That creates a real burden

4   for SeeCubic, Your Honor.

5          Second, Your Honor, we thought long and hard about

6   this motion before we filed it, both in terms of the relief

7   requested and the authority for that relief.  We believe that

8   the relief we have requested is surgically targeted and

9   appropriate.  Specifically, this is not a Rule 11 motion and

10  it is limited to the bad faith actions of Mathu and Stream in

11  connection with the Chapter 7 case and the Chapter 7 appeal.

12         And those actions amount to a collateral attack on

13  your Chapter 11 dismissal order, which is a final order that

14  Stream itself chose to appeal.  That Chapter 11 appeal, like

15  the Chapter 7 appeal, continues to move forward.

16         To be clear, we do intend to seek relief before

17  Judge Lassiter for Mr. Rajan's and Stream's violations of

18  Judge Lassiter's injunction order, but this narrow relief is

19  before you because the relief we are seeking is limited to

20  the bad faith tactics that have been employed in the Chapter

21  7 case that are entirely contrary to your Chapter 11

22  dismissal order.

23         Third, Your Honor, we provided an update in our

24  reply on the status of the Chancery Court litigation, and

25  that included attaching as exhibits the various orders Judge

1   Lassiter has entered denying the motions filed by Stream, Mr.

2   Rajan, and petitioning creditor Jamuna Travels (ph).

3          We also attached his order issuing a permanent

4   injunction and granting summary judgment in favor of SeeCubic

5   with respect to the validity of the omnibus agreement.  We

6   filed those, Your Honor, so you would have an accurate

7   picture of the state of play.

8          Stream's suggestion in their objection that the

9   sheer volume of motions that were pending before Judge

10   Lassiter somehow demonstrated that it had a number of good

11   faith disputes with the movants is simply incorrect.  Your

12   Honor, with respect to the legal argument and the particular

13   objections raised by Stream, I'd like to focus on four

14   points.

15          First, I'd like to address causation.  Stream

16   contends that Your Honor cannot hold it liable for fees in

17   connection with the Chapter 7 case because all fees and

18   expenses the movants have incurred related to the Chapter 7

19   motion to dismiss were really caused by the petitioning

20   creditors.  Your Honor, in Goodyear the Supreme Court held

21   that a party's ability to recover legal fees pursuant to a

22   federal court's inherent authority is limited to, quote, "the

23   fees that party would not have incurred but for the bad

24   faith."  And that's at --

25          THE COURT:  I'm sorry, Mr. Tullson --

1          MR. TULLSON:  -- page 1184 of that opinion.

2          THE COURT:  -- Mr. Tullson, I --

3          MR. TULLSON:  Sure.

4          THE COURT:  -- I apologize, I need to interrupt

5   you.  We have an issue with the video feed -- oh, I now see

6   you.  Hold on one second.

7     (Pause)

8          THE COURT:  Okay, I apologize.  It corrected

9   itself.  We couldn't see you for a few minutes.  So, go

10  ahead.  If you don't mind starting your causation argument --

11         MR. TULLSON:  Was the audio --

12         THE COURT:  -- over, that would be great.

13         MR. TULLSON:  -- okay?

14         THE COURT:  The audio is good --

15         MR. TULLSON:  Oh, sure.

16         THE COURT:  -- yes.

17         MR. TULLSON:  Okay.  Okay, great.  Thank you, Your

18  Honor.

19         On causation, Stream contends that Your Honor

20  cannot hold it liable for fees and expenses that have been

21  incurred in connection with a Chapter 7 because all of those

22  fees and expenses were really caused by the petitioning

23  creditors.

24         In Goodyear, the Supreme Court held that a party's

25  ability to recover legal fees pursuant to a federal court's

1  inherent authority is limited to, quote, "the fees that party

2  would not have incurred but for the bad faith."  And that's

3  at page 1184 of that opinion.

4       We satisfy that test, Your Honor.  Mathu Rajan and

5  the entities he controls were the but-for cause of the

6  Chapter 7 case and the related appeal.

7       In their objection to dismiss the Chapter -- to

8  our motion to dismiss the Chapter 7, the petitioning

9  creditors said themselves in a pleading signed by their

10  counsel exactly why they commenced the Chapter 7 case.  They

11  laid out a litany of things that they expected the Chapter 7

12  trustee to do that, in their view, made Chapter 7 a good path

13  for them.  Those included pursuing causes of action against

14  Stream's independent directors who approved entry into the

15  omnibus agreement, and also pursuing fraudulent transfer

16  claims against SeeCubic in connection with the transfers of

17  assets that had occurred pursuant to the omnibus agreement.

18       Your Honor, as we noted in our reply, the

19  petitioning creditors in their objection said that, quote,

20  "funding for the trustee's undertakings is to be provided by

21  VTI."  That's at Docket Number 22, paragraph 4 of the

22  petitioning creditors' objection.  We don't need additional

23  discovery here.

24       The petitioning creditors said in a signed

25  pleading that everything they expect the Chapter 7 trustee to

1   do in the Chapter 7 case would be funded by VTI.  As Your

2   Honor likely recalls from the Chapter 11 case, VTI is an

3   entity that was created by and is controlled by Mathu Rajan.

4           In addition, Stream settled pending litigation

5   with one of the other petitioning creditors, Rembrandt 3D,

6   the day before the Chapter 7 petition was filed -- I believe

7   it actually was the day it was filed.  And, under that

8   agreement, Stream was given a license by Rembrandt to use its

9   technology, which Stream then argued provided a basis for

10  which Stream could reorganize in a new Chapter 11 case.

11          Two more points on this, Your Honor.  First, the

12  response that Stream had to the involuntary Chapter 7 case

13  was telling.  They basically said, this is great, what we

14  want to do, Your Honor, is just convert the Chapter 7 case to

15  a Chapter 11 and make all of the same arguments over again,

16  even though they already were appealed.  That tells you

17  everything you need to know about what really goes on here

18  and why this Court found the Chapter 7 was a bad faith

19  attempt by Mathu Rajan and the entities he controls to get a

20  second bite at the apple.

21          Second, counsel for the petitioning creditors said

22  at the hearing on our motion to dismiss the Chapter 7 that he

23  didn't think the petitioners would have any problem with this

24  going back to an 11 if all of the representations made about

25  funding by VTI, and so and so forth, are carried forward.

1  And that starts at page 22, line 24, of that June 10th

2  hearing transcript.

3          In short, Mathu Rajan and the entities he controls

4  are the but-for cause of all of movants' fees and expenses

5  related to the Chapter 7 case and the Chapter 7 appeal.

6          Second, there's Stream's 303(i) argument.  There

7  are really two things I would like to highlight in response.

8  The first, as we noted in our brief, is that Section 303(i)

9  just doesn't apply here on its face.  It says that the

10  bankruptcy court may grant judgment against the petitioners

11  and in favor of the debtor for costs or attorneys' fees, or

12  against any petitioner that filed a petition in bad faith.

13  It says nothing at all to limit this Court's inherent

14  authority to grant fees against the debtor or against any

15  other third party, for that matter.  There's nothing in the

16  statute and there's nothing in the legislative history that

17  undermines this Court's inherent authority to award fees as a

18  sanction for bad faith conduct.

19          Your Honor, the Supreme Court's <u>Chambers</u> decision

20  that we cite is really instructive on this point.  It cites

21  to multiple Supreme Court cases from long before the 1978

22  bankruptcy code was even enacted that recognized the inherent

23  power to assess attorneys' fees for bad faith.  And that's at

24  pages 42 to 45 of that opinion.

25          So Section 303(i) does not strip away this Court's

1  inherent authority, Your Honor.

2       The second thing I would like to highlight in

3  response to the 303 argument is the inequitable and absurd

4  result that follows if Stream's Catch-22 argument is correct.

5  They basically say, look, the petitioning creditors are

6  really the only party that anyone can go after for bad faith

7  actions taken in connection with an involuntary bankruptcy.

8  Then they say that only the debtor can seek fees from the

9  petitioning creditors -- and then this is the really crazy

10 part -- that Section 303(i) operates to effectively shield

11 Mathu Rajan, Stream, and really everyone other than the

12 petitioning creditors from any consequence of bad faith

13 actions taken in connection with an involuntary Chapter 7

14 case.

15      Your Honor, that can't be right, that can't be

16 law, and it's not right as a legal matter because Section

17 303(i) is inapplicable to our motion seeking relief from

18 Mathu Rajan and Stream.

19      Third, Stream suggests that fees and costs in

20 connection with the Chapter 7 appeal need to be sought with

21 the district court and not this court.  Your Honor, again we

22 point to Chambers, and in that decision the Supreme Court

23 considered and squarely rejected the argument that the trial

24 court lacks authority to regulate bad faith conduct for

25 actions taken outside of the trial court, including before

1  other tribunals such as appellate courts.  The Supreme Court

2  noted that its cases are to the contrary and that, as long as

3  a party receives an appropriate hearing, the party may be

4  sanctioned for abuses of process occurring beyond the

5  courtroom.

6         And as we noted in our reply, to the extent that

7  Judge Gross held in Memorial Corp. that the trial court

8  lacked authority to impose fees or sanctions related to the

9  conduct of appeals, not only is that really not binding on

10  Your Honor, we would respectfully submit that the holding is

11  contrary to the Supreme Court's ruling in Chambers and should

12  not be followed.

13         On a related note, the Ninth Circuit Del Mission

14  case also should not be followed for two reasons.  First,

15  again, we think that the Del Mission case is inconsistent

16  with Chambers.  The Ninth Circuit in that decision said that

17  Federal Rule of Appellate Procedure 38 is the, quote, "only

18  authority that provides for appellate fees for frivolous

19  appeals."  But when Chambers was decided in 1991, Appellate

20  Procedure Rule 38 was basically the same rule we have today.

21  That rule has been promulgated by the Supreme Court.  When

22  Rule 38 was amended in 1994, it just added the requirement

23  that a party must receive notice and a hearing, but it

24  otherwise provided that if a court of appeals determines that

25  an appeal is frivolous, it may award costs.

1          And if you read <u>Chambers</u>, it also says at 501 U.S.

2    49 that the court's prior cases, quote, "have indicated that

3    the inherent power of a court can be invoked even if

4    procedural rules exist which sanction the same conduct."

5          As you may recall from looking at that case, Your

6    Honor, the party in that case was arguing, you can't sanction

7    me pursuant to your inherent authority because Rule 11 now is

8    the sole vehicle through which bad acts can be sanctioned.

9    And the Supreme Court rejected that approach and said, even

10   if the same conduct could be punished under a rule, that

11   doesn't strip away the court's inherent authority.

12          And, second, Your Honor, we are arguing that the

13   fact that they've appealed the Chapter 7 order at all is a

14   bad faith attempt to skirt Your Honor's prior Chapter 11

15   dismissal order.  So, even assuming Rule 38 would ordinarily

16   apply to a request for fees from the appeal of the Chapter 11

17   dismissal order, that's simply not the situation here.  Here,

18   the collateral attack on your Chapter 11 dismissal order is

19   really a distinct consideration that warrants an award of

20   fees.

21          So, again, Your Honor, the <u>Del Mission</u> approach

22   has not been adopted by the Third Circuit and, in our view,

23   is inconsistent with <u>Chambers</u> to the extent Rule 38 would be

24   interpreted to limit this Court's inherent authority.

25          Fourth and finally, Your Honor, I'd like to

1  briefly touch on the divestiture rule.  Stream is, frankly,

2  just wrong on this point.  In our reply, we cite cases from

3  the district court and from other bankruptcy courts that make

4  clear that the divestiture rule does not preclude the Court

5  from addressing issues that are ancillary to an appeal or

6  from, quote, "enforcing or implementing its order because, in

7  implementing an appealed order, the trial court does not

8  disrupt the appellate process so long as its decision remains

9  intact for the appellate court to review."  And that's in the

10  Pursuit Capital Management case from 2017.

11      We also cite Judge Walrath's decision in

12  Washington Mutual in 2011 where she explained that, quote,

13  "the correct statement of the divestiture rule is that, so

14  long as the lower court is not altering the appealed order,

15  the lower court retains jurisdiction to enforce it."

16      So it's clear that you have jurisdiction to hear

17  this motion, notwithstanding the fact that Stream has

18  appealed not only your Chapter 11 dismissal order, but also

19  your Chapter 7 dismissal order.

20      And finally, Your Honor, I do need to note that

21  Mathu Rajan failed to object to this motion.  Accordingly,

22  this Court can and should summarily grant the relief

23  requested against Rajan individually in accordance with the

24  proposed order.  And, as we noted in our reply, Judge Gross'

25  decision in Memorial Corp., a case Stream heavily relies on,

1  actually supports granting relief requested against Rajan

2  individually.  In that case, Judge Gross awarded sanctions

3  against the GSF entities, having found that they were in

4  complete, direct control of the debtors, and they were

5  dictating the filing and course of the bankruptcy cases for

6  their own benefit and to the movants' detriment.

7          Your Honor has made very similar findings already

8  here.  Rajan, similarly, is the but-for cause of the Chapter

9  7 and the related appeals, and he similarly should bear some

10 of the costs for his bad faith misconduct.

11         Your Honor, unless you have any questions, I'd

12 reserve for any rebuttal.

13         THE COURT:  Okay.  I don't think I have any

14 questions at this time.  Why don't I hear from counsel to

15 Stream?

16         And I apologize, I'm not sure if you can tell, but

17 I actually cannot see you at the moment.  The video screen

18 has gone out, so -- actually, could you let me know, can you

19 all see me?

20         MR. TULLSON:  We can, Your Honor.

21         THE COURT:  You can?  Okay.  Can you see each

22 other?

23         MR. TULLSON:  Yes, Your Honor.

24         THE COURT:  Okay.  Give me -- please give me one

25 moment.

1       (Pause)

2           THE COURT:  Okay, we need to take a five-minute

3   break so I can fix the video feed.  I apologize.  Let's come

4   back on at 25 after, all right?  I apologize.  And then I'll

5   hear from Stream.  Thank you.

6           MR. TULLSON:  Thank you.

7       (Recess taken at 10:17 a.m.)

8       (Proceedings resumed at 10:25 a.m.)

9           THE COURT:  Okay, all, we are back on the record.

10  Thank you for your patience.  I think we've corrected the

11  issues on our side.

12          So I think where we left it is I was going to hear

13  from counsel to Stream, so I'll turn the podium over to you.

14  Is it Ms. Dolphin who is going to be arguing today?

15          MS. DOLPHIN:  Yes.  Good morning, Your Honor.  May

16  it please the Court, Brenna Dolphin of Polsinelli.  I'm

17  joined today by my colleague and mentor, Mr. Ward.  We

18  represent Stream TV, Your Honor, and we request the Court

19  deny the movants' request for the award of sanctions in its

20  entirety.

21          Your Honor, for the purposes of responding to the

22  request for sanctions, we are joined by Mathu Rajan.

23  Although we do not represent him, for the purposes of today's

24  argument and for the purposes of the objection that we filed

25  on September 3rd, Mr. Rajan joined us.  He recently retained

1  counsel, Mr. Dupre from McCarter & English; however, his

2  recently-retained counsel is unable to appear today and asked

3  that we state on the record that Mathu joins the request that

4  the Court deny the motion for sanctions in its entirety.

5         Your Honor, Stream TV is confident that, at the

6  end of today's presentation, the Bankruptcy Court will echo

7  Vice Chancellor Lassiter and find that the motion for

8  attorneys' fees and expenses is unwarranted.

9         To begin with, a somewhat minor housekeeping

10  issue.  To the extent the Court is going to do anything today

11  other than deny the motion for sanctions in its entirety, we

12  would ask to receive the opportunity to file a surreply.  We

13  believe this request is in the interests of judicial economy

14  and furthers the interest of affording due process to a party

15  against whom sanctions are sought.

16         We submit to the Court that the case in chief was

17  mostly hidden within the reply that was filed earlier this

18  week.  For example, opposing counsel just cited to a number

19  of facts related to the petitioning creditors and Rembrandt

20  3D.  These arguments could have been made and should have

21  been made in the case in chief.  We would ask, to the extent

22  you're not going to just deny the request for sanctions, that

23  we be allowed an opportunity to respond meaningfully to this

24  new theory of liability.

25         Moving into what are we doing here today.  The

1  Court is going to be asked to decide whether it has

2  jurisdiction, we submit the answer is no.  The Court has

3  previously ruled that the divesture doctrine applied and the

4  Court had no jurisdiction over the Chapter 7 case.

5          Secondly, we disagree with opposing counsel and

6  with the movants.  The Court is not being asked today to

7  enforce or implement any of its rulings, it's being asked to

8  expand, alter, and extend them.

9          Next, do Section 303, Bankruptcy Rule 820, and

10  Federal Appellate Rule of Procedure 38 limit the Court's

11  ability in its exercise of its inherent powers?  The answer

12  is yes.  I will get into why as we move through our argument.

13          The next question the Court will have to answer,

14  have the movants demonstrated that bad faith has occurred or

15  that misconduct has occurred?  Then, assuming that misconduct

16  has been proven, is that misconduct the but-for causation for

17  the attorneys' fees and expenses the movants seek as

18  recompense from Stream TV?  We respectfully submit the

19  answers to both of these questions are no.

20          And finally, Your Honor, the Court will have to

21  decide whether the award the movants seek in the form of over

22  $400,000 of attorneys' fees and expenses, whether that's

23  reasonable.

24          Under the divestiture doctrine, again, we submit,

25  Your Honor, that you've already ruled that the Court lacks

1   jurisdiction over the Chapter 7 case.  The district court

2   indicated it agreed with the bankruptcy court's ruling on

3   this issue within its ruling on the motion for stay pending

4   appeal.  And we respectfully submit, again, that the movants

5   are not asking to enforce, but rather to amend and alter the

6   reach of the prior rulings.

7           The American rule, Your Honor, stands for the

8   proposition that each party in litigation is responsible for

9   its own attorneys' fees and costs.  There are narrow

10  exceptions, and the Supreme Court tells us that they're

11  narrow, and where courts depart from the American rule, they

12  first look to codified statutes and procedural rules before

13  they exercise their inherent powers.  This remains true even

14  where there is a finding of bad faith.

15          The inherent power of a court must be exercised

16  with restraint and discretion because it is shielded from

17  traditional direct democratic controls; it is limited by more

18  specific provisions that are contained in other statutes and

19  rules.  And, as the Third Circuit informs us in In re Ross,

20  the inherent power doctrine does not extend to actions that

21  conflict with specific, explicit, and express terms of the

22  bankruptcy code.

23          And in Fellheimer and in -- the Third Circuit

24  tells us, and in Chambers the Supreme Court agrees, that even

25  where a court has found there is bad faith conduct in the

1  course of litigation, the court ordinarily should rely on the

2  rules rather than inherent power.

3          The movants request they be awarded fees and costs

4  related to filing and prosecuting a motion to dismiss the

5  Chapter 7 petition.  They offer what they term the co-

6  wrongdoer argument.  We respectfully reject the notion that

7  there's wrongdoing and that there's any sort of collaboration

8  or conspiracy on behalf of Stream TV and the petitioning

9  creditors.  There's no factual record that's been developed

10  that would allow the Court to amalgamate the conduct of the

11  petitioning creditors and Stream TV; they are not the same

12  party, they did not act in concert, there's no legal basis

13  offered for the proposition that Stream TV could be

14  sanctioned for conduct committed by another party.

15          Case law tells us that where a court is

16  considering the imposition of sanctions it should first look

17  to the statute and rule.  Stream TV disagrees with the

18  characterization offered by the movants related to the

19  Section 303(i) argument.

20          There, Judge Shannon in In re Seven Holdings

21  informs us that the award of attorneys' fees and costs under

22  Section 303 in the context of an involuntary petition is

23  limited to a debtor, and he further explained that it would

24  be improper to award fees and costs to a non-debtor party,

25  even where a Chapter 7 involuntary petition is dismissed on a

1   finding of bad faith.  And, again, as the case law tells us,

2   Section 105(a), the Court's inherent powers do not create

3   substantive rights that contradict other codified provisions

4   of the bankruptcy code or that would otherwise be unavailable

5   under the bankruptcy code.

6          In the context of an involuntary petition, Section

7   303(d) and Section 706 of Title 11 specifically permit a

8   debtor to answer an involuntary petition and move the

9   bankruptcy court to convert the Chapter 7 case to a Chapter

10  11 case.  Then, Bankruptcy Rule 1011 permits a debtor to

11  respond to an involuntary petition.  We submit it would be

12  improper to infer that bad faith occurred from the fact that

13  Stream TV participated in the involuntary Chapter 7 case.

14         Assuming the movants make it past this hurdle and

15  the Court finds that the filing of the involuntary petition

16  was misconduct, the Court must then engage in the but-for

17  causation analysis.  The involuntary petition was filed by

18  the petitioning creditors, the motion to dismiss the

19  involuntary petition was filed by the movants, there's no

20  evidence in the record to rebut the fact that the petitioning

21  creditors are the parties who commenced the involuntary

22  Chapter 7 case.

23         To the extent the movants are arguing that parties

24  within a bankruptcy case who make the same arguments are

25  therefore in collusion or engaging in something nefarious, we

1  would caution the Court against this line of reasoning.  As

2  Your Honor is more than aware, bankruptcy practice is full of

3  consensus-building and the tides are constantly shifting.

4  Parties who find themselves aligned in one part of the case

5  are then at odds in another.  It just so happens that the

6  petitioning creditors, it seems, are under the belief that

7  their only ability to recover is within a bankruptcy case.

8         And Stream TV also would like to avail itself of

9  the protections of the bankruptcy code in order to effectuate

10 its plans to reorganize.  The financial path that was

11 proposed was rejected by Your Honor; however, the Court must

12 deny the movants' request for an award of sanctions related

13 to the secured creditors preparation, filing, and arguing a

14 motion to dismiss.  Even if Stream TV had not appeared at all

15 in the Chapter 7 case, the secured creditors would have had

16 to file, prepare, and argue the motion to dismiss.  Stream TV

17 is not the causation of the attorneys' fees and expenses

18 related to the motion to dismiss the involuntary case.

19        The movants also seek recovery of attorneys' fees

20 and expenses related to defending the Chapter 7 appeal.  Your

21 Honor, we believe and we submit that filing the motion for

22 stay pending appeal was properly filed in the district court.

23 The district court is competent to police conduct that occurs

24 before it.  And, again, hearkening back to the public policy

25 underpinnings of the inherent power doctrine and what the

1  Court is asked to do in its -- when it's considering whether

2  to impose sanctions and depart from the American rule, we do

3  have appellate rules and procedures that govern the conduct

4  of appeals and, even if there is a bad faith finding, the

5  Court should first rely on rules and statutes that are in

6  place before it resorts to its inherent powers.

7         And then, again, Stream TV filed the motion for

8  stay pending appeal, but had it not filed one, the

9  petitioning creditors would have filed their own motion for

10 stay pending appeal.  Although the two appellant groups spoke

11 about who was filing the motion for stay pending appeal, this

12 is not something nefarious or evidence of bad faith.  We

13 believe that filing directly in the district court limited

14 the amount of litigation, instead of having to file in the

15 bankruptcy court first and then also the district court.  And

16 then also, if both parties had filed a motion for stay

17 pending appeal, the secured creditors would have had to argue

18 two of those motions instead of one.

19         So, again, there's no but-for causation related to

20 the request for an award of sanctions based on Stream TV's

21 filing of a motion for a stay pending appeal.

22         Finally, the movants request that the Court award

23 them their attorneys' fees and costs related to filing the

24 motion for sanctions.  We think this is improper.  In their

25 case in chief and their motion, they cited to no legal

1  precedent that supported the proposition that they were

2  entitled to recover these.  Baker -- in the Supreme Court

3  case Baker Botts, the Supreme Court made clear that, as a

4  general rule, no attorneys are entitled to receive fees for

5  fee defense litigation absent express statutory authority.

6  We submit that by analogy that applies here.  A party who

7  wants a court to depart from the American rule bears the

8  burden of proof of persuasion that departure from this rule

9  is appropriate.  And, even where there is bad faith, courts

10  rely on statutes and rules before they resort to their

11  inherent powers.

12          In their reply, the secured creditors include a

13  citation to a case out of Bankruptcy Court in Oregon.  And,

14  Your Honor, if you read -- the devil is in the details and,

15  if you read that carefully, the inherent powers were used to

16  supplement an award of attorneys' fees given to the

17  prevailing party under Section 727 litigation.  So there a

18  creditor sought to deny discharge to individual debtors,

19  consumer debtors, and the consumer debtors prevailed.  So,

20  there, the inherent power doctrine was used to supplement a

21  codified allowance of fee shifting that's embodied in the

22  bankruptcy code and that was -- you know, embodies

23  congressional intent, it was not used in dereliction or

24  contravention, or to create a substantive right where none

25  existed.

1          Looking at what does bad faith look like in the

2    context of awarding sanctions.  We've gone into a lot of

3    details in our response.  Generally, it's failing to

4    prosecute an action, cause undue delay, willful disobedience

5    of a court order, concealing assets, making misstatements,

6    failing to conduct discovery properly.  We submit to the

7    Court, appealing an adverse ruling isn't the same as acting

8    in direct contradiction -- or contravention of an order.

9          And here, Your Honor, when you ruled in the

10   Chapter 7 dismissal hearing on June 10th, the Court used the

11   term "circumvent."  The Court did not make a finding that

12   Stream TV or the petitioning creditors contravened,

13   disobeyed, or violated any prior order.  Nothing in the

14   record has indicated that Stream TV has caused delay or

15   disruption, or disobeyed a court order, and the status quo

16   remains intact.

17         In conclusion, the Court must rule in favor of

18   Stream TV and deny the motion for sanctions.  First, the

19   divestiture doctrine, the Court has already ruled that it

20   lacked jurisdiction over the involuntary Chapter 7 case.

21   Secondly, on that point, the movants are not asking the Court

22   to enforce or implement either the Chapter 11 or the Chapter

23   7 dismissal rulings or orders; they're asking you to expand

24   those and the exercise of inherent power here to sanction

25   Stream TV would be inappropriate.

1        The movants have offered insufficient grounds for

2   the departure from the American rule.  Imposing sanctions

3   against Stream TV would be inconsistent with Bankruptcy Code

4   Section 303, Federal Rule of Bankruptcy Procedure 8020, and

5   Federal Rule of Appellate Procedure 38.

6        We respectfully submit the movants have failed to

7   establish bad faith and, even if the Court finds that the

8   movants have established bad faith, the alleged bad faith or

9   misconduct committed by Stream is not the but-for causation

10  related to the attorneys' fees, costs and expenses incurred

11  by the movants.  In the event that the Court disagrees with

12  everything we've outlined, the Court still has to conduct a

13  reasonableness inquiry into the attorneys' fees, costs and

14  expenses the movants seek to recover.

15        And then to finish, Your Honor, a quote from Vice

16  Chancellor Lassiter, it's the transcript of the September

17  17th hearing, page 46, lines 1 through 14.  "Even in a world

18  where I granted SeeCubic's summary judgment motion, there

19  would still be opportunity for motion practice and appeals

20  and all kinds of things.  So I'm under no illusions that this

21  case is going to be finally decided as a result of dealing

22  with the stack of papers in front of me.  Obviously, if I

23  rule for the Stream/Rajan side, it's not over, but even if I

24  were to rule for the SeeCubic side, it's effectively not

25  over.  So everyone should hear me that we need to get to

1  regular order and we need to not be in a world of chaos where

2  things get lobbed in days before long-scheduled hearings."

3           Now, Your Honor, to the extent the movants suggest

4  that sanctions are required in order to limit the litigation

5  and appellate practice, we disagree with that and we would

6  ask that the Court deny their request for relief in its

7  entirety.

8           THE COURT:  Okay.  Thank you, Ms. Dolphin.  I

9  appreciate your argument today.  I don't have any questions.

10          I'll turn the podium over to Mr. Tullson if you

11 would like a brief reply.

12          MR. TULLSON:  Thank you, Your Honor.

13          Let me start with the -- I found that quote to be

14 just incredibly ironic, that Judge Lassiter when he was -- I

15 was at that hearing, he was encouraging the parties to return

16 to regular order.  What he was doing was chastising Jamuna

17 and Mr. Rajan for filing late motions before the Chancery

18 Court and, specifically, the petitioning creditor Jamuna's

19 eleventh hour motion the night before to intervene, parroting

20 all of the same theories that Stream has been pursuing.

21          And what we heard today, Your Honor, is that Mr.

22 Rajan apparently has retained McCarter & English.  That's not

23 new.  They haven't appeared in this case, they were at the

24 Chancery Court hearing on September 17th.  So the idea that

25 he can just sit in the -- you know, quietly and hope that

1    this will all blow over, it's just more bad faith.  He has

2    counsel, he's had new counsel -- I don't know what set of

3    counsel this is for him, but he's had this new counsel for

4    weeks and he chose not to respond to this motion at all.

5            With respect to the arguments on 303, you know,

6    again, I think this is just an argument I've already

7    addressed that there is no conflict with a specific provision

8    of the bankruptcy code.  They're just -- they're just,

9    frankly, ignoring the issue.  303 deals with the mechanics

10   for getting fees and costs against a petitioning creditor; if

11   their argument is true, everyone else in a Chapter 7 case is

12   immunized from any liability for bad faith conduct,

13   regardless of but-for causation, because 303 provides a

14   mechanism for a court and the debtor to go after a

15   petitioning creditor who improper filed the Chapter 7.

16           Similarly, Your Honor, you know, again, you read

17   Chambers, the rules are Rule 11, Rule 38, Rule 8020, those

18   are not the exclusive means to remedy bad conduct and to

19   deter future bad conduct; it's simply not what courts have

20   held.  And, you know, we didn't bring this motion under Rule

21   11, we did not go after counsel in this action, but, Your

22   Honor, there was bad faith.  You found that there was bad

23   faith, you found that this was an attempt to get a second

24   bite at the apple.

25           With respect to the appeal, you know, again, these

1   are really kind of, in a sense, counter-factual arguments.

2   SeeCubic -- Stream filed a notice of appeal first appealing

3   the Chapter 7; they filed the emergency stay motion, the

4   petitioning creditors didn't; they've done all of the

5   argument so far.  We had a chambers conference with

6   Magistrate Thynge about mediation and the petitioning

7   creditors were effectively silent.

8          And, Your Honor, with respect to the fees on fees

9   argument, you know, as a threshold matter I would just point

10  out that this is not a defense litigation.  We did not file a

11  fee application.  But, Your Honor, we think that the fees

12  associated with this motion do satisfy causation under

13  Goodyear and we don't think the historical case we're dealing

14  with is really on point here because this is not a fee

15  application.  But, again, if you disagree, Your Honor, we can

16  certainly live without an award from this Court for the fees

17  associated with bringing the present motion.

18         We're really just trying to recoup some of our

19  costs and to deter, frankly, continued abuse of process by

20  Mathu.  And we can split up the fees for you, if you'd like,

21  between -- for what we submitted between what was really

22  related to defending the Chapter 7 to the motion to dismiss

23  and separately what was for the fees associated with bringing

24  this motion.

25         And, Your Honor, we do have and we noted in our

1   reply we have approximately, you know, $110,000 in fees and

2   expenses associated with the Chapter 7 appeal in the district

3   court to date, including specifically responding to Stream's

4   emergency motion for a stay pending appeal.  You know, again,

5   Your Honor, if you disagree with our view that you have

6   jurisdiction to award fees related to the appeal, we can

7   certainly live without an award from this Court for the fees

8   and expenses.

9           But again, Your Honor, I mean, just what we heard

10  today, you know, Mathu is apparently here, he's on the phone,

11  he has attorneys, we know he's had the same set of attorneys

12  for weeks because they appeared in Chancery Court two weeks

13  ago.  I mean, this is exactly the type of bad faith abuse.

14  They want to kick the hearing, they want a surreply, they

15  want discovery.  All of this is just a bad faith attempt to

16  drive up costs for SeeCubic and SLS, Your Honor.  And we

17  submit that an order from you awarding fees and costs

18  pursuant to your inherent authority will help to put a stop

19  to that.

20          Thank you, Your Honor.

21          THE COURT:  Okay, thank you.

22          Give me one minute to get my thoughts in order,

23  please.

24      (Pause)

25          THE COURT:  Okay.  Well, thank you all very much

1   for the argument that you made today.  After reviewing the

2   papers and considering the arguments today and the arguments

3   made in those papers, I've determined that I'm going to deny

4   the motion without prejudice, because despite, Mr. Tullson,

5   your argument that you find that divestiture doesn't apply, I

6   disagree.  And I do believe that at this time I don't have

7   jurisdiction to hear the motion given the appeals of the

8   Chapter 7 and Chapter 11 dismissal orders, and let me explain

9   why, but I have to be careful because even my ruling on this

10  motion could be seen as altering or expanding my ruling in

11  dismissing the Chapter 7 proceeding.

12          To determine whether I'm divested of jurisdiction,

13  I have to determine whether the subject matter presented in

14  the appeal is so closely related to the issues raised in the

15  motion before me that the entry of an order would

16  impermissibly interfere with an appellant's right in its

17  appeal, and here I do think consideration of and ruling on

18  the motion would do so.

19          To determine whether or not fees are warranted, I

20  would need to decide in part the level and the extent of Mr.

21  Rajan and Stream's participation in the decision to file the

22  Chapter 7 case.  In the words used by the movants here, were

23  they in fact, quote, "driving the bus," end quote, and caused

24  the filing?  Was there collusion?  And, upon review of the

25  transcript of the last hearing, there was no direct evidence

1  on that topic admitted into evidence at that hearing.

2          Rather, I think the focus of the presentation

3  during that hearing and my ruling was on what the petitioning

4  creditors hoped to accomplish through the filing, including

5  using the bankruptcy case to try to negotiate a settlement

6  with the secured creditors through an intervention in the

7  Chancery Court or in the district court appeal of the pending

8  Chapter 11 dismissal order; and also, critically, Stream's

9  intervening objection to the dismissal motion and its

10  admitted plan to convert the case to one under Chapter 11 and

11  pursue their strategies and goals of the then-dismissed

12  Chapter 11 case.

13          The movants in connection with their fee motion

14  have pointed to statements made in the dismissal briefing to

15  support collusion, but I find that that's insufficient to

16  support a finding of collusion today.

17          Therefore, deciding the motion at this time would

18  require a further evidentiary hearing on Mr. Rajan and

19  Stream's prepetition -- and I say prepetition, prepetition

20  Chapter 7 behavior -- which I think could be a waste of

21  judicial and party resources if the appellate court

22  determines that my dismissal order should be vacated.

23          And, perhaps most importantly, additional findings

24  on my part related to collusion -- excuse me, related to the

25  collusion among the petitioning creditors, Stream, and Mr.

1  Rajan would affect the issues on appeal and I think cause

2  even more confusion.

3         So, for those reasons, I'm going to deny the

4  motion and I'll so order the record today.

5         And while the appeals are pending, I think the

6  movants are of course free to seek fees and expenses as

7  appropriate in the district court or in the Chancery Court.

8         So, with that, I'm not going to enter -- Mr.

9  Tullson, unless you would like me to enter an order denying

10 your motion, which I'm happy to do so, I was planning on so

11 ordering the record.

12         MR. TULLSON:  That's fine, Your Honor.  Thank you.

13         THE COURT:  Okay.  Thank you all very much.  And

14 let me ask, is there anything else we should discuss today?

15      (No verbal response)

16         THE COURT:  Okay, I'm not hearing anything.  So

17 we'll consider the hearing adjourned.  And I wish you all

18 well, and I hope your families and yourselves are doing okay,

19 and look forward to seeing you in person soon.

20         All right, everyone, take care.  We're adjourned.

21         COUNSEL:  Thank you, Your Honor.

22      (Proceedings concluded at 10:53 a.m.)

23

24

25

1                          CERTIFICATION

2             I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8

9    /s/ Tracey Williams                    October 22, 2021

10   Tracey Williams, CET-914

11   Certified Court Transcriptionist

12   For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25